STATE OF CONNECTICUT *v.* MAKEE R.[1]
(AC 28946)

DiPentima, Alvord and Pellegrino, Js.

Argued May 20—officially released September 22, 2009

---

[1] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse and the crime of risk of injury to a child, we decline to use the defendant's full name or to identify the victim or others through whom the victim's identity may be ascertained. See *General Statutes* § 54-86e.

*John R. Gulash, Jr.*, for the appellant (defendant).

*Frederick W. Fawcett*, supervisory assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict*, state's attorney, and *Cornelius P. Kelly*, senior assistant state's attorney, for the appellee (state).

*Opinion*

ALVORD, J. The defendant, Makee R., appeals from the judgment of conviction, rendered after a jury trial, of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2)[2] and risk of injury to a child in violation of General Statutes § 53-21 (a) (2).[3] On appeal, the defendant claims that he was denied a fair trial before a neutral judge in violation of the fifth, sixth and fourteenth amendments to the United States constitution.[4] Specifically, he argues that the court's jury instructions improperly invaded the province of the fact finder, bolstered the credibility of the victim,

[2] General Statutes § 53a-70 (a) provides in relevant part: "A person is guilty of sexual assault in the first degree when such person . . . (2) engages in sexual intercourse with another person and such other person is under thirteen years of age and the actor is more than two years older than such person . . . ."

[3] General Statutes § 53-21 (a) provides in relevant part: "Any person who . . . (2) has contact with the intimate parts, as defined in section 53a-65, of a child under the age of sixteen years or subjects a child under sixteen years of age to contact with the intimate parts of such person, in a sexual and indecent manner likely to impair the health or morals of such child . . . shall be guilty of . . . a class B felony . . . ."

[4] The defendant also alleges a violation of article first, § 8, of the constitution of Connecticut. He does not claim, however, additional protections thereunder or brief the claim separately. Consequently, we deem his state constitutional claim abandoned. See *State* v. *Simpson*, 286 Conn. 634, 651 n.17, 945 A.2d 449 (2008).

diluted the state's burden of proof and prejudiced his case. We disagree and affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The defendant is the minor, paternal uncle of the victim. During the time in question, he lived in his parents' home with his mother, father, grandmother, two sisters and two brothers. From January, 2003, to August, 2005, the victim was a frequent guest in the defendant's home where she received before and after school care from her grandmother, the defendant's mother.

Almost every weekday, the victim's mother dropped the victim off at the defendant's house before school. The victim walked to and from school with the defendant's younger brother, who attended the same facility. She remained at the defendant's house in the care of her grandmother until late in the evening when she was picked up by one of her parents, usually her father. Occasionally, the victim also spent weekends at the defendant's house. While in the defendant's home, the victim spent most of her time with her grandmother and the defendant's younger brother, who was closest to her in age.

The victim first revealed the sexual assault to her mother in August, 2005. At trial, the victim testified with specificity about two instances of sexual abuse. The first incident occurred in the defendant's upstairs bedroom. The victim explained that the defendant told her to go upstairs, where he locked the door and made her perform fellatio. She also testified that a second, similar incident took place downstairs in the basement bedroom of the defendant's older brother while the defendant played a pornographic video. In addition to her verbal explanation, the victim demonstrated for the jury what happened on both occasions using anatomically correct dolls.

When questioned, the victim could not recount a time when she was left alone with the defendant or remember the general time frame during which either incident occurred. The state's expert witness, a school psychologist who did not examine the victim personally, testified that it is typical for children to have difficulty pinpointing or sequencing events and that young children often run together similar events that happened on more than one occasion.

The defendant's trial strategy was to undermine the victim's credibility and to establish that the sexual assault could not have taken place because the defendant and the victim were never alone together. The defendant's brothers testified that their mother never left the victim by herself in the house. Various members of the defendant's family stated that the defendant usually played baseball or basketball after school and was not often at home. They maintained that the defendant did not care for the company of children and was uninterested in playing with the victim. The defendant testified and denied ever having sexual contact with the victim or showing her pornographic materials.

The defendant, his mother and his two brothers also testified that the basement bedroom of the defendant's older brother was always locked. They contended that only the defendant's older brother and mother had keys to that room and that the defendant's older brother did not allow anyone in his room. The defendant's family insisted that the only videocassette recorder (VCR) in the house was in the living room and that the defendant's older brother did not have a VCR, a digital videodisc player, a computer or pornographic movies in his bedroom. During their investigation, the police department did not attempt to determine whether there was a VCR or pornographic material in the basement bedroom of the defendant's house.

The defendant was convicted on both counts and sentenced to a term of twenty-five years incarceration, suspended after fifteen years, and twenty-five years of probation.

The defendant now alleges several errors in the instructions given to the jury. First, he takes issue with a portion of the instructions to the venire panels prior to the start of evidence in which the court described the procedure for sentencing should the jury return a verdict of guilty.[5] He argues that the court's explanation of its sentencing process put extraneous information before potential jurors, misled them as to their role and "created a mindset and framework for a finding of guilt." Second, the defendant contends that the court's reference to the complaining witness as a "victim" in a case in which the defense was that no crime had been committed prejudiced him by setting "up an expectation and filter for overvaluing evidence consistent with guilt . . . ."[6]

[5] On November 22, 2006, the court instructed: "Let me just comment to you about what your duties are if you are selected to be a juror in this case. The primary function of a jury in a criminal case is to determine if the accused is guilty or not guilty of any one or all of the crimes with which the accused is charged.

"It is never the function of the jury to consider or speculate over what the consequences of what a finding of guilt would be. When a jury returns a verdict of guilty in a criminal case, the judge presiding over that trial will continue that case for what we call a sentencing hearing. That usually is continued for a period of six or eight weeks; when the six or eight weeks has expired, the judge will have a report to consider . . . . The judge will hear from the prosecuting attorney, and if there are victims that wish to be heard, the victims are entitled to be heard at the sentencing hearing. The court will hear from the defense attorney, the court will hear from the accused himself, if he wishes to be heard personally, and any other person that should be heard from, and then the court decides what is a fair, and just, and legal sentence. That is not the function of the jury." Similar explanations were given to the venire panels that convened on November 21 and 29, 2006.

[6] To support his claim, the defendant cites the reference to "victims" made by the court during the preliminary instructions discussed in footnote 5: "[A]t [the] sentencing hearing the judge hears from the state, hears from

Third, the defendant takes issue with the sympathy charge the court delivered prior to the start of jury deliberations: "I mentioned earlier about sympathy and deciding whether a defendant is guilty or not guilty. You should not concern yourselves with the punishment to be meted out in the event of a conviction. Nor should you be influenced by any sympathy for the accused, the family of the accused or for any other person who might in any way be affected by your decision. In other words, your feelings are not evidence." The defendant points out that the sympathy instruction given by the court omitted a warning against sympathizing with "the complainant or her family" that he had requested.[7] He argues that the version delivered by the court reinforced infirmities in the instructions given to the venire panels.

Finally, the defendant objects to the court's final charge regarding the testimony of children: "Now, in a case involving the sexual abuse of a very young child that the child's capacity to recall specifics and the state's concomitant ability to provide exactitude in an information are very limited. The state can only provide what it has. This court will not impose a degree of certitude as to date, time and place that will render prosecutions of those who sexually abuse children impossible. To do so would have us establish by judicial fiat a class of crimes committable with impunity."[8] He

the defense, hears from any witnesses, including victims . . . ." Similar statements were made to the other two venire panels.

[7] The sympathy charge requested by the defendant is similar to the sample instruction available on the Connecticut judicial branch Internet site. The charge requested by the defendant reads: "In deciding whether the accused is guilty or not guilty, you should not concern yourselves with the punishment to be meted out in the event of a conviction. Nor should you be influenced by any sympathy for the accused, the accused's family, the complainant or her family or for any other person who might be in any way affected by your decision."

[8] The charge was taken directly from State v. Saraceno, 15 Conn. App. 222, 237, 545 A.2d 1116, cert. denied, 209 Conn. 823, 824, 552 A.2d 431, 432 (1988). We agree with the defendant that it was not intended to be used as a jury instruction.

maintains that the child testimony instruction, which was requested by the state and delivered prior to the start of jury deliberations, bolstered the victim's testimony and conveyed an expectation of a conviction in a case in which the credibility of the victim was critical to the state's case. The defendant asserts that when viewed cumulatively, the court's jury instructions implied that a crime had been committed, invaded the province of the jury and violated his right to an impartial proceeding. We are not persuaded.

The defendant failed to object to the instructions at trial and now seeks review under *State* v. *Golding,* 213 Conn. 233, 567 A.2d 823 (1989).[9] Under *Golding,* "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) Id., 239–40.

"[T]he first two [prongs of *Golding*] involve a determination of whether the claim is reviewable; the second two . . . involve a determination of whether the defendant may prevail." (Internal quotation marks omitted.) *State* v. *Wright,* 114 Conn. App. 448, 458, 969 A.2d 827 (2009). The defendant has met his burden with respect to reviewability. His allegations of impropriety are of

[9] The defendant also invites us to review his claims under our inherent supervisory authority and the plain error doctrine. We decline to do so. The plain error doctrine and our supervisory powers are reserved for extraordinary circumstances that are not implicated by the present case. See *Smith* v. *Andrews,* 289 Conn. 61, 79, 959 A.2d 597 (2008).

constitutional magnitude,[10] and the trial transcript provides a sufficient record for review. Thus, resolution of the defendant's appeal turns on whether the court's instructions to the jury amounted to a clear constitutional violation that clearly deprived the defendant of a fair trial. We conclude that they did not.

It is well settled that jury instructions are to be reviewed in their entirety. *State* v. *Collazo*, 113 Conn. App. 651, 668, 967 A.2d 597, cert. denied, 293 Conn. 904, 976 A.2d 705 (2009). "When the challenge to a jury instruction is of constitutional magnitude, the standard of review is whether it is reasonably possible that the jury [was] misled." (Internal quotation marks omitted.) Id. "In determining whether it was . . . reasonably possible that the jury was misled by the trial court's instructions, the charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement . . . ." (Internal quotation marks omitted.) *State* v. *Griffin*, 251 Conn. 671, 714, 741 A.2d 913 (1999). Individual instructions also are not "to be judged in artificial isolation . . . ." (Internal quotation marks omitted.) Id. Instead, "[t]he test to be applied . . . is whether the charge . . . as a whole, presents the case to the jury so that no injustice will result." (Internal quotation marks omitted.) Id.

Even though we review this claim under the third prong of *Golding*, we note that "[w]hen the principal participant in the trial whose function it is to protect the rights of his client does not deem an issue harmful enough to press in the trial court, the appellate claim that the same issue clearly deprived the defendant of a fundamental constitutional right and a fair trial . . . is seriously undercut." (Internal quotation marks omit-

---

[10] See *State* v. *Vargas*, 80 Conn. App. 454, 462, 835 A.2d 503 (2003) ("[c]entral to a defendant's right to a fair trial is the right to have issues of fact and credibility decided by the jury"), cert. denied, 267 Conn. 913, 840 A.2d 1175 (2004).

ted.) *State* v. *Skelly*, 78 Conn. App. 513, 515–16, 827 A.2d 759, cert. denied, 266 Conn. 910, 832 A.2d 74 (2003).[11]

With respect to the preliminary instructions, we agree that "[i]nformation regarding the consequences of a verdict is . . . irrelevant to the jury's task"; *Shannon* v. *United States*, 512 U.S. 573, 579, 114 S. Ct. 2419, 129 L. Ed. 2d 459 (1994); and that "providing jurors [with] sentencing information invites them to ponder matters that are not within their province, distracts them from their factfinding responsibilities, and creates a strong possibility of confusion." Id. However, we find that the jury was "fully and properly instructed at the critical time, after all the evidence and after the arguments of counsel"; (internal quotation marks omitted) *State* v. *Marra*, 222 Conn. 506, 537, 610 A.2d 1113 (1992); and that the preliminary instructions did not affect the overall fairness and integrity of the proceeding as a whole.

First, the court prefaced and concluded each description to the venire panels of the sentencing process by emphatically stating that sentencing is not the function of the jury and that the primary function of the jury is to determine whether the accused is guilty or not guilty.[12] Second, the court properly advised each venire panel regarding the presumption of innocence and burden

[11] In the present case, the defendant had ample opportunity to object to both the preliminary and the final instructions. Instead, he remained silent while the court repeated its description of the sentencing process on three separate occasions to three separate venire panels. Likewise, the defendant did not take issue with the court's final charge, although he had two opportunities to do so outside the presence of the jury, including directly after the charge conference was held and directly after the charge was delivered.

[12] On November 21, 2006, the court instructed the venire panel as follows: "[Y]our duties as a juror . . . are to determine whether or not [the defendant] is guilty or not guilty of either one or both of these charges. It is never, ever the duty or the responsibility or the concern of a juror, individually or as a group, to contemplate or worry about or speculate as to the consequences of a finding of guilty. . . . That is not the function of the jury." Substantially similar instructions were issued on November 22 and 29, 2006.

of proof. Finally, the court's preliminary instructions properly described the jury's role as fact finder.[13]

Moreover, the defendant's contention that the improper "suggestion" went uncorrected and was compounded by the sympathy instruction is without merit; the court did not revisit or reiterate its explanation of the sentencing procedure in its final instruction to the jury. Instead, the court stated: "[Y]ou are the sole judges of the facts. It is your duty to find the facts. . . . My actions during the trial and ruling on the motions or objections by counsel, or in any comments that might have been made to counsel, or any questions I might have asked of a witness, or in setting forth the law in these instructions are not to be taken by you as any indications whatsoever of my opinion as to how you should determine the issues of fact."[14] In short, the mere suggestion of risk that "the jury would believe that the responsibility for finally determining the facts rest[s] elsewhere," as argued by the defendant, does not amount to a reasonable possibility that the jury was misled or constitute a clear deprivation of the defendant's right to a fair trial.[15]

---

[13] On November 21, 22 and 29, respectively, the court instructed the venire panels as follows: "[Y]our job includes the responsibility to evaluate the believability of everyone that testifies before you"; "I should comment to you about another responsibility that you have, and that is the responsibility to evaluate the testimony of everyone who will testify before you"; and, "[a]s a juror in a criminal case, you have the right to accept all of a witness' testimony, you have a right to reject all of a witness' testimony, and you have the right to accept some and reject other portions of any witness' testimony. You have the obligation, you have the duty to evaluate each and every witness' testimony by the same standards."

[14] We also note that the defendant's initial request to charge, filed on December 8, 2006, after the jury had been selected, did not contain a request to address and correct the court's preinstruction description of the sentencing process.

[15] Furthermore, the court's use of the term "victim" is not comparable to the seventy-six similar references that warranted reversal of the judgment in *State* v. *Cortes*, 84 Conn. App. 70, 851 A.2d 1230 (2004), aff'd, 276 Conn. 241, 885 A.2d 153 (2005). The court also precisely referred to the complainant in its final instruction: "The state has offered evidence of statements made

The defendant's argument with respect to the final jury instruction is also unavailing. "The prevailing view . . . is that a trial judge retains discretion to determine whether the jury should receive a special instruction with respect to the credibility of a young witness, and, if so, the nature of that instruction." (Internal quotation marks omitted.) *State* v. *James*, 211 Conn. 555, 567–68, 560 A.2d 426 (1989). In the present case, the court exercised its discretion. Whether the defendant's constitutional rights were violated "depends upon the way in which a reasonable juror could have interpreted the instruction." (Internal quotation marks omitted.) *State* v. *Vasquez*, 182 Conn. 242, 247, 438 A.2d 424 (1980).

The court's final instructions spanned twenty-two pages of transcript and adequately explained the charges the defendant faced, the burden of proof, the presumption of innocence and the jury's role as fact finder. The court counseled the jury to consider a number of factors in deciding which testimony to believe[16] and explained that expert testimony is not binding on the jury and could be disregarded "either in whole or in part." Additionally, the final charge to the jury did not misstate the law. "The general rule in Connecticut is that [t]ime is not an essential ingredient of the crime

by the complainant in the case concerning the alleged crimes, and these statements were admitted into evidence. This evidence is admitted solely to corroborate the complainant's testimony in court. . . . To the extent that the complainant has been consistent in what she said, you may find her testimony in court to be corroborated or supported."

[16] The court instructed the jury as follows: "Was the witness able to see or hear or know the things about which the witness testified? How well was the witness able to recall and describe those things? What was the witness' manner while testifying? And, did the witness have any interest in the outcome of this case or any bias or prejudice concerning any party or any matter involved in the case? How reasonable was the witness' testimony considered in light of all the evidence in the case? Was the witness' testimony contradicted by what the witness has said or done at another time or by the testimony of other witnesses or by other evidence? Was the witness' testimony corroborated by any evidence presented in the case?"

202

of [sexual assault]." (Internal quotation marks omitted.) *State* v. *Saraceno*, 15 Conn. App. 222, 236, 545 A.2d 1116, cert. denied, 209 Conn. 823, 824, 552 A.2d 431, 432 (1988), quoting *State* v. *Horton*, 132 Conn. 276, 277, 43 A.2d 744 (1945). As a result, we believe the jury reasonably understood the law, scope and gravity of its task.

We conclude that the jury instructions, read as a whole, did not clearly violate the defendant's constitutional rights or clearly deprive him of a fair trial as required for reversal under *Golding*.

The judgment is affirmed.

In this opinion the other judges concurred.