## STATE OF CONNECTICUT *v.* JOANNE WARREN
### (AC 29315)

Bishop, Beach and Hennessy, Js.

Argued September 24—officially released December 15, 2009

*Lauren Weisfeld*, assistant public defender, for the appellant (defendant).

*Rita M. Shair*, senior assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict*, former state's attorney, and *Brian F. Kennedy*, senior assistant state's attorney, for the appellee (state).

*Opinion*

HENNESSY, J. The defendant, Joanne Warren, appeals from the judgment of conviction, rendered after a jury trial, of two counts of larceny in the fifth degree in violation of General Statutes §§ 53a-119 and 53a-125a, credit card theft in violation of General Statutes § 53a-128c, four counts of forgery in the third degree in violation of General Statutes § 53a-140, four counts of criminal impersonation in violation of General Statutes § 53a-130, identity theft in the third degree in violation of General Statutes §§ 53a-129a and 53a-129d, and two counts of larceny in the sixth degree in violation of General Statutes §§ 53a-119 and 53a-125b. On appeal, the defendant claims that the trial court violated her constitutional right to an impartial, properly instructed jury by giving an improper instruction after the initial jury charge. Specifically, the defendant claims that because the court's subsequent, allegedly improper instruction stated that the written charge was only to be used as a guide, the court either muddied the jury's understanding that it was bound to accept the law as

it was given by the court or, alternatively, suggested that the jury could reject the law entirely and find her guilty on some extralegal or insufficient basis. We disagree and affirm the judgment of the trial court.

The jury reasonably could have found the following facts. Ellen Mallozzi, the victim, met the defendant through Jonathan Warren, the defendant's nephew. During the relevant time period, Jonathan Warren was dating Sarah Mallozzi, the victim's daughter. In March or April, 2006, Jonathan Warren introduced the defendant to the victim. From that point on, the defendant and the victim developed a friendship.

In July, 2006, the victim was planning a high school graduation party for her daughter. In anticipation of the party, the victim needed her house to be cleaned. Because of the stress associated with planning the party, and because the defendant had indicated that she wanted to make some money in light of the upcoming birthday of her boyfriend, the victim asked the defendant to clean her house. The defendant agreed. On July 18, 2006, both the defendant and her boyfriend, Brodarick Baker, arrived at the victim's house in the early afternoon to clean. The mail had been delivered to the house by the time the defendant started cleaning, and the victim had not removed it from the mailbox. Additionally, an employee for the bank responsible for issuing JC Penney credit cards testified that a gold JC Penney credit card had been mailed to the victim on July 9, 2006.

Approximately one month later, when the victim was reviewing her JC Penney credit card account statement, she noticed a number of charges for items she had not purchased. For example, on July 18, 2006, there was a charge of $379 for a ten karat gold rope chain. On July 29, 2006, the birthday of the defendant's boyfriend, there were charges for a JC Penney gift card for $400; shorts,

T-shirts, pants and a pair of sneakers purchased for $66.95; and Nike footwear purchased for $42.99. After viewing these charges, the victim immediately telephoned JC Penney, cut up her credit card and threw it away. JC Penney subsequently closed the victim's account, marked it as fraudulent and suggested that she file a complaint with the police.

Following JC Penney's advice, the victim filed a complaint with the Trumbull police department. In her statement, she suggested that the police contact the defendant. The defendant admitted to the police that she had used a JC Penney gold credit card issued to the victim and that she had been signing the victim's name when making purchases. She later brought the JC Penney gold card to the police station, and she gave a full statement. Although the defendant claimed that Sarah Mallozzi had given her permission to use the credit card, Sarah Mallozzi denied granting such permission. Furthermore, the victim stated that not only had she not authorized the defendant's use of the card, she did not know of the card's existence until after she contacted JC Penney to report the disputed charges.

At trial, after the evidence was introduced, closing arguments were made and the jury was charged orally, the court stated that it was going to provide a written copy of the charge to the jury. The defendant's trial counsel, in response, requested that a copy of the charge be entered into the record as a court document. The court acquiesced and ordered the jury back into the courtroom. The court informed the jury: "I'm going to have the evidence sent back to you, the information, and I'm—I'm going to send you a copy of the jury charge. But once again, this, like the information, is not evidence in the case. It is only to be used by you as a guide. The information acts as a guide; [it] is not evidence in the case. So, I will send back with the information, a

copy of my jury charge so you can make references to any part of the—that you deem necessary, okay."

After receiving a written copy of the charge and deliberating, the jury found the defendant guilty of all charges. She was sentenced to a term of ten years incarceration, execution suspended after five years, and five years of probation.

The defendant alleges on appeal that her constitutional right to be tried by a properly instructed jury was violated when the court instructed the jury that it was to use the copy of the written charge only as a "guide." The defendant argues that the "instruction was insufficient to assure that no injustice was done [because] the charge as a whole failed to protect the defendant from the very real danger that the jury disregarded law that it expressly was told was 'only' a 'guide,' and instead convicted her on some extralegal or insufficient basis." She further argues: "Viewing the charge in this case in its entirety . . . it is clear that by instructing the jury that the written charge was 'only' a 'guide,' the court at best muddied the jury's understanding that it was bound to accept the law as it was given by the court and, at worst, the court suggested that the jury could reject that law entirely. This is indisputable; the word 'only' connotes 'nothing more than' or 'something less than,' and the term 'guide' connotes something that directs; it is something that advises but is not binding." We are not persuaded.

The defendant failed to object to the instructions at trial and now seeks review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[1] Under *Golding*,

[1] The defendant also argues that her claim is reviewable under the plain error doctrine. See Practice Book § 60-5. The plain error doctrine, which provides a rule of reversibility, rather than reviewability, "is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." (Internal quotation marks omitted.) *State* v. *Cutler*, 293 Conn. 303, 326, 977 A.2d 209 (2009). This case does not present such an extraordinary situation warranting the application of the plain error doctrine.

"a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Emphasis in original.) Id. "[T]he first two [prongs of *Golding*] involve a determination of whether the claim is reviewable; the second two . . . involve a determination of whether the defendant may prevail." (Internal quotation marks omitted.) *State* v. *Wright*, 114 Conn. App. 448, 458, 969 A.2d 827 (2009).

The defendant has met her burden with respect to reviewability. The trial transcript clearly provides a sufficient record for review. As for the constitutional magnitude condition, the United States Supreme Court has commented that, "[t]hough the line separating the permissible jury practice from the impermissible may not be the brightest . . . a line must be drawn somewhere, and the constitutional inviolability of that border must be scrupulously respected lest the purpose and functioning of the jury be seriously impaired." (Citations omitted.) *Brown* v. *Louisiana*, 447 U.S. 323, 331, 100 S. Ct. 2214, 65 L. Ed. 2d 159 (1980). Despite the absence of a bright line, Connecticut jurisprudence is clear that "every claim of instructional error is not truly constitutional in nature."[2] *State* v. *Walton*, 227 Conn. 32, 64, 630

---

[2] "Indeed, it would trivialize the constitution to transmute a nonconstitutional claim into a constitutional claim simply because of the label placed on it by a party or because of a strained connection between it and a fundamental constitutional right." (Internal quotation marks omitted.) *State* v. *LaBrec*, 270 Conn. 548, 557, 854 A.2d 1 (2004).

A.2d 990 (1993); see also *State* v. *Dash*, 242 Conn. 143, 151–52, 698 A.2d 297 (1997). Rather, our Supreme Court previously has "considered an instructional impropriety to be of constitutional dimension only when it has gone to the elements of the charged offense, the burden of proof or the presumption of innocence, concepts that undeniably are fundamental to the notion of a fair and impartial jury trial." *State* v. *LaBrec*, 270 Conn. 548, 557, 854 A.2d 1 (2004).

Here, the defendant alleges that the court's instruction that the jury use the copy of the written charge "only . . . as a guide," negated the court's earlier oral instruction and, consequently, allowed the jury to reject the law as provided by the court. If the jury was not bound by the instruction as alleged, the court's use of the phrase "only . . . as a guide" affected all portions of the charge, including those of a constitutional magnitude such as the elements of the charged offense and the burden of proof. Thus, we conclude that the second prong of *Golding* is met and that the defendant's claim is reviewable.

Accordingly, the resolution of the defendant's appeal turns on whether the court's instructions to the jury amounted to a clear constitutional violation that clearly deprived the defendant of a fair trial.[3] See *State* v. *Makee R.*, 117 Conn. App. 191, 198, 978 A.2d 549 (2009). It is well settled that jury instructions are to be reviewed in their entirety. See *State* v. *Collazo*, 113 Conn. App. 651, 668, 967 A.2d 597, cert. denied, 293 Conn. 904, 976 A.2d 705 (2009). "When the challenge to a jury instruction is of constitutional magnitude, the standard

---

[3] Even though we review this claim under the third prong of *Golding*, we note that "[w]hen the principal participant in the trial whose function it is to protect the rights of his client does not deem an issue harmful enough to press in the trial court, the appellate claim that the same issue clearly deprived the defendant of a fundamental constitutional right and a fair trial . . . is seriously undercut." (Internal quotation marks omitted.) *State* v. *Makee R.*, 117 Conn. App. 191, 198, 978 A.2d 549 (2009).

of review is whether it is reasonably possible that the jury [was] misled." (Internal quotation marks omitted.) Id. In making this determination, "the charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement . . . ." (Internal quotation marks omitted.) *State* v. *Griffin,* 251 Conn. 671, 714, 741 A.2d 913 (1999). Individual instructions also are not "to be judged in artificial isolation . . . ." (Internal quotation marks omitted.) Id. Instead, "[t]he test to be applied . . . is whether the charge . . . as a whole, presents the case to the jury so that no injustice will result." (Internal quotation marks omitted.) Id.

In reviewing the charge as a whole, we conclude that the court's use of the phrase "only . . . as a guide" in instructing the jury did not amount to a clear constitutional violation that clearly deprived the defendant of a fair trial. Before the trial commenced, the court gave preliminary instructions to the jury on procedure. The court stated that "[w]hen the arguments are completed, once again I will instruct you on the law that you will apply to the facts of the case, and then you'll go into the deliberation room and deliberate. . . . Before you may discuss this case . . . you must have heard from me the instructions on the law that you will apply to the facts as you find them to be." Following closing arguments, the court charged the jury by stating: "The function of the court and jury; it is exclusively the function of the court to state the rules of law that govern the case with instructions as to how you are to apply them. It is your obligation to accept the law as I state it. You must follow all my instructions and not single out some and ignore others; they are all equally important." In concluding the charge, the court again wanted to emphasize that "the law is given to you by the court; it is your duty to accept the law as given to you by the court. It is your duty to determine the facts."

The defendant does not take specific issue with the court's initial oral charge to the jury or with the written copy of that charge. Rather, the defendant argues that a clear constitutional violation exists due to the court's use of the phrase "only . . . as a guide" when it presented a copy of the written charge to the jury because the jury could have understood that to mean that it could disregard the law as previously laid out by the court. This reading by the defendant is unsustainable. We cannot review this particular instructional phrase by the court in isolation from the thirty-nine page charging document. See *State* v. *Gonzalez*, 69 Conn. App. 649, 659, 796 A.2d 1225, cert. denied, 260 Conn. 937, 802 A.2d 91 (2002). The context of the court's instruction that the written copy of the charge be used "only . . . as a guide" makes clear that the court was contrasting the instructions with evidence instead of commenting on whether the jury had to follow the instructions. Moreover, despite any ambiguity surrounding the contested instructional phrase, the copy of the charge itself correctly guided the jury by stating, in multiple places, as we have discussed, that the jury was obligated to accept the law as provided by the court. Although jury instructions do serve as a guide, they are a mandatory guide, and here it is clear that the jury was bound by the instructions. Thus, after reviewing the record, we cannot say that the court's instructional phrase "only . . . as a guide" created a reasonable possibility that the jury was misled.

As a result, we conclude that the jury instructions, read as a whole, did not clearly violate the defendant's constitutional rights or clearly deprive her of a fair trial as required for reversal under the third prong of *Golding*.

The judgment is affirmed.

In this opinion the other judges concurred.