******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

STATE OF CONNECTICUT *v.* EVER LEE HOLLEY
(AC 38115)

Alvord, Sheldon and Mullins, Js.

*Syllabus*

Convicted of the crime of possession of narcotics with intent to sell by a
person who is not drug-dependent, the defendant appealed to this court,
claiming that the trial court improperly instructed the jury on reasonable
doubt. Specifically, he claimed that the court improperly instructed the
jury that reasonable doubt "is such a doubt as, in serious affairs that
concern you, you will heed; that is, such a doubt as would cause reason-
able men and women to hesitate to act upon it in matters of importance."
He also claimed that the trial court improperly denied his motion to
suppress certain evidence that had been seized by police during a war-
rantless search of his residence. The defendant, who was on parole,
claimed that a warrantless search of a parolee's residence that fails
to comply with certain administrative directives of the Department of
Correction is unconstitutional, even if the parolee had previously exe-
cuted an agreement authorizing such searches as a condition of his
parole. The trial court rejected that argument and also denied the motion
to suppress on the ground that the defendant had orally consented to
the search. *Held*:
1. The defendant's claim that the phrase "upon it" in the court's instruction
concerning reasonable doubt effectively diluted the state's burden of
proof was unavailing; our Supreme Court repeatedly has upheld the use
of instructions employing the very language challenged by the defendant,
and this court, as an intermediate appellate court, was bound by that
controlling precedent.
2. The defendant could not prevail on his claim that the jury was misled by
the trial court's instructions regarding proof beyond a reasonable doubt,
which was based on his claim that the trial court improperly orally
instructed the jury that reasonable doubt is such doubt as "you will
heed," rather than "you would heed," as was stated in the court's written
instructions; the defendant having failed to object to the discrepancy
between the written and oral instructions, his claim was unpreserved,
and he failed to demonstrate the existence of a constitutional violation
that deprived him of a fair trial pursuant to the third prong of the test
set forth in *State* v. *Golding* (231 Conn. 233), as there was no reasonable
possibility that the jury was confused by the court's use of "will" instead
of "would" when the jury had before it the written instructions, and both
sets of charges adequately explained the principles governing burden of
proof, the presumption of innocence and reasonable doubt.
3. This court dismissed as moot the defendant's claim that the trial court
improperly denied his motion to suppress evidence that was seized in
a warrantless search of his residence; there was no practical relief that
could be afforded to the defendant with respect to his claim that his
constitutional rights were violated when the police did not follow certain
administrative regulations concerning searches of a parolee's residence,
as the trial court also determined that the defendant had orally consented
to the search of his residence, which was an independent basis that
supported the trial court's decision to deny the motion to suppress that
was not challenged by the defendant on appeal.

Argued February 6—officially released July 11, 2017

(Appeal from Superior Court, judicial district of
Middlesex, Diana, J.)

*Procedural History*

Two part information charging the defendant, in the
first part, with the crime of possession of narcotics with
intent to sell, and, in the second part, with being a
subsequent offender, brought to the Superior Court in

the judicial district of Middlesex, where the court, *Diana, J.*, denied the defendant's motion to suppress certain evidence; thereafter, the first part of the information was tried to the jury; verdict of guilty; subsequently, the second part of the information was tried to the jury; verdict of guilty; thereafter, the court granted the defendant's motion for a judgment of acquittal on the second part of the information and rendered judgment in accordance with the verdict as to the first part of the information, and the defendant appealed to this court. *Appeal dismissed in part; affirmed.*

*Jeremiah Donovan*, for the appellant (defendant).

*Kathryn W. Bare*, assistant state's attorney, with whom, on the brief, was *Peter A. McShane*, state's attorney, for the appellee (state).

*Opinion*

MULLINS, J. The defendant, Ever Lee[1] Holley, appeals from the judgment of conviction, rendered after a jury trial, of possession of a narcotic substance with intent to sell by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b). On appeal, the defendant claims that the trial court improperly (1) instructed the jury on reasonable doubt and (2) denied his motion to suppress evidence. We reject both of these claims and, therefore, affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On December 11, 2012, the narcotics unit of the Middletown Police Department executed a search and seizure warrant on the residence of Rachel Sweeney at 165 South Main Street in Middletown. Sweeney was arrested on drug possession charges as a result of the search.

At the time the warrant was executed, the defendant and another person were sitting in a car parked in the area behind 165 South Main Street. One officer detained the defendant while others searched Sweeney's residence. After police completed the search, David Skarzynski, a parole officer who had assisted the Middletown officers in executing the warrant, was alerted to the defendant's presence outside the residence. Skarzynski recognized the defendant as a parolee who previously had been under his supervision. Skarzynski asked the defendant for permission to search his residence at 29 Avon Court in Middletown. The defendant consented.

Skarzynski and officers with the narcotics unit traveled to the defendant's residence. Upon conducting a search of the defendant's bedroom, the officers recovered, among other items, 16.529 grams of crack cocaine from a locked safe located underneath the defendant's bed.

The defendant was arrested and charged with possession of a narcotic substance with the intent to sell in violation of § 21a-278 (b). After a jury found the defendant guilty of that offense,[2] the court sentenced him to ten years incarceration, five years of which were mandatory, followed by eight years of special parole. This appeal followed.

## I

### REASONABLE DOUBT INSTRUCTION

The defendant's first claim is that part of the court's instruction on reasonable doubt was improper. Specifically, he argues that the court erred in describing reasonable doubt as follows: "[Reasonable doubt] is such a doubt as, in serious affairs that concern you, you will heed; that is, such a doubt as would cause reasonable men and women to hesitate to act upon it in matters

of importance." The defendant asserts that the language used in this part of the court's charge was defective in two respects. We address both of his linguistic challenges herein.

A

The gravamen of the defendant's first challenge is that the "insertion . . . of the prepositional phrase 'upon it' render[ed] the instruction nonsensical," causing it to "mean the opposite of what it should." He argues that reversal is required because this part of the instruction effectively diluted the state's burden of proof by "muddl[ing] the description of what a reasonable doubt is" and by failing to "impress . . . upon the [jury] the need to reach a subjective state of *near certitude* of [the defendant's] guilt." (Emphasis altered; internal quotation marks omitted.)

The state responds that the defendant concedes that our appellate courts have upheld instructions employing the "upon it" language. Therefore, it contends that this court, as an intermediate court, is constrained to following that controlling precedent. We agree with the state.

We begin by identifying our standard of review and outlining the relevant legal principles. "It is fundamental that proof of guilt in a criminal case must be beyond a reasonable doubt. . . . The [reasonable doubt concept] provides concrete substance for the presumption of innocence—that bedrock axiomatic and elementary principle whose enforcement lies at the foundation of the administration of our criminal law. . . . At the same time, by impressing upon the [fact finder] the need to reach a subjective state of near certitude of the guilt of the accused, the [reasonable doubt] standard symbolizes the significance that our society attaches to the criminal sanction and thus to liberty itself. . . . [Consequently, the defendant] in a criminal case [is] entitled to a clear and unequivocal charge by the court that the guilt of the [defendant] must be proved beyond a reasonable doubt." (Citations omitted; internal quotation marks omitted.) *State* v. *Jackson*, 283 Conn. 111, 116–17, 925 A.2d 1060 (2007).

"Because our system entrusts the jury with the primary responsibility of implementing the substantive protections promised by the reasonable doubt standard, reasonable doubt jury instructions which appropriately convey [the reasonable doubt concept] are critical to the constitutionality of a conviction." *United States* v. *Doyle*, 130 F.3d 523, 535 (2d Cir. 1997). Accordingly, "[a] claim that the court's reasonable doubt instruction diluted the state's burden of proof and impermissibly burdened the defendant is of constitutional magnitude." *State* v. *Alberto M.*, 120 Conn. App. 104, 115, 991 A.2d 578 (2010).

"A challenge to the validity of jury instructions pre-

sents a question of law over which this court has plenary review. . . . It is well settled that jury instructions are to be reviewed in their entirety. . . . When the challenge to a jury instruction is of constitutional magnitude, the standard of review is whether it is reasonably possible that the jury [was] misled. . . . In determining whether it was . . . reasonably possible that the jury was misled by the trial court's instructions, the charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement . . . . Individual instructions also are not to be judged in artificial isolation. . . . Instead, [t]he test to be applied . . . is whether the charge . . . as a whole, presents the case to the jury so that no injustice will result." (Citation omitted; internal quotation marks omitted.) *State* v. *Brown*, 118 Conn. App. 418, 428–29, 984 A.2d 86 (2009), cert. denied, 295 Conn. 901, 988 A.2d 877 (2010).

As acknowledged by both parties, our Supreme Court repeatedly has upheld the use of instructions that utilized the very language the defendant challenges. See, e.g., *State* v. *Winfrey*, 302 Conn. 195, 218, 24 A.3d 1218 (2011) (instruction explaining that reasonable doubt is " 'such doubt as would cause reasonable men and women to hesitate to act upon it in matters of importance' " not constitutionally infirm); *State* v. *Mark R.*, 300 Conn. 590, 616–17, 17 A.3d 1 (2011) ("this court has rejected virtually identical claims on multiple occasions"); *State* v. *Johnson*, 288 Conn. 236, 288–90, 951 A.2d 1257 (2008) (rejecting challenge to instruction describing reasonable doubt as " 'such a doubt as would cause reasonable [people] to hesitate to act upon it in matters of importance' "); *State* v. *Delvalle*, 250 Conn. 466, 474 n.11, 473–75, 736 A.2d 125 (1999) (same);[3] see also *State* v. *Vazquez*, 119 Conn. App. 249, 258, 259–61, 987 A.2d 1063 (2010) (not improper to instruct jury that reasonable doubt is " 'doubt as would cause reasonable men and women to hesitate to act upon it in matters of importance' "); *State* v. *Hernandez*, 91 Conn. App. 169, 178–79, 883 A.2d 1 (same), cert. denied, 276 Conn. 912, 886 A.2d 426 (2005); *State* v. *Otero*, 49 Conn. App. 459, 470–74, 715 A.2d 782 (same), cert. denied, 247 Conn. 910, 719 A.2d 905 (1998).

"[A]s an intermediate court of appeal, we are unable to overrule, reevaluate, or reexamine controlling precedent of our Supreme Court. . . . As our Supreme Court has stated: [O]nce this court has finally determined an issue, for a lower court to reanalyze and revisit that issue is an improper and fruitless endeavor." (Internal quotation marks omitted.) *State* v. *Brantley*, 164 Conn. App. 459, 468, 138 A.3d 347, cert. denied, 321 Conn. 918, 136 A.3d 1276 (2016).

Accordingly, since our Supreme Court already has determined that the challenged description of reasonable doubt is not improper, we cannot conclude to

the contrary.

## B

The defendant's second challenge to the court's reasonable doubt instruction concerns the language used in describing reasonable doubt as "a doubt as, in serious affairs that concern you, you *will* heed." (Emphasis added.) His specific contention is that the court erred in using the word *will* instead of "the subjunctive *'would'* "; (emphasis in original); and that this error impermissibly diluted the state's burden of proof. Although we review this unpreserved claim pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), we conclude that there is no reasonable possibility that the challenged language misled the jury.

The following additional procedural history is relevant to our resolution of the defendant's claim. At the time it instructed the jury, the court provided the jurors and counsel with typewritten copies of its instructions. The court informed the jury that it would deliver its instructions by reading the typewritten version aloud: "As you see, I'm reading these instructions. I do that because they were prepared in advance, and I want to make sure that I say exactly what I intend to say. Do not single out any sentence or individual point or instruction in my charge and ignore the others. You are to consider all the instructions as a whole, and consider each, in light of all the others." The jurors had copies of the written instructions during their deliberations.

In the typewritten version of the instructions, reasonable doubt was described, in relevant part, as a "doubt, as in serious affairs that concern you, you *would* heed." (Emphasis added.) However, the transcript of the trial court proceedings indicates that the court's oral instruction described reasonable doubt as "a doubt, as in serious affairs that concern you, you *will* heed." The defendant never took an exception to the court's use of the word "will" in its oral instructions.[4] Also, there is no indication in the record that the jury, the court, or counsel noticed the discrepancy between the oral and written instructions. Moreover, the jury did not request clarification as to that discrepancy or on any of the court's instructions pertaining to reasonable doubt and the burden of proof.

We next set forth our standard of review and the relevant legal principles. "[U]nder *Golding* review, as modified in *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015), a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial; and (4) if subject to harmless

error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis omitted; internal quotation marks omitted.) *State* v. *Polanco*, 165 Conn. App. 563, 572, 140 A.3d 230, cert. denied, 322 Conn. 906, 139 A.3d 708 (2016). It is an error of constitutional magnitude to instruct the jury on reasonable doubt in such a manner as to dilute the state's burden of proof. *State* v. *Alberto M.*, supra, 120 Conn. App. 115.

"[I]n reviewing a constitutional challenge to the trial court's instruction, we must consider the jury charge *as a whole* to determine whether it is reasonably possible that the instruction misled the jury. . . . The test is whether the charge *as a whole* presents the case to the jury so that no injustice will result." (Emphasis added; internal quotation marks omitted.) *State* v. *Frasier*, 169 Conn. App. 500, 509, 150 A.3d 1176 (2016), cert. denied, 324 Conn. 912, 153 A.3d 653 (2017).

Reviewing courts are especially hesitant in reversing a conviction on the basis of an inaccuracy in a trial court's oral instruction if the jury was provided with accurate written instructions. See, e.g., *State* v. *Warren*, 118 Conn. App. 456, 464, 984 A.2d 81 (2009) (no constitutional violation where trial court's oral charge suggested written instructions should be used "only . . . as a guide" because "the [*written*] *copy of the charge itself* correctly guided the jury by stating . . . that the jury was obligated to accept the law as provided by the court" [emphasis added]), cert. denied, 294 Conn. 933, 987 A.2d 1029 (2010); *United States* v. *Rodriguez*, 651 Fed. Appx. 44, 48 (2d Cir. 2016) ("In this case, there is no indication that the jurors were confused by the court's misreading of the instruction. The jury was able to follow along from the correct written instructions during the oral charge, and it had access to those written instructions during its deliberations. . . . [This] mitigated any risk of confusion . . . ."); *United States* v. *Colman*, 520 Fed. Appx. 514, 517 (9th Cir.) ("a [trial] court's misstatement while reading instructions aloud does not constitute reversible error if it provides proper written jury instructions to the jury members"), cert. denied, U.S. , 133 S. Ct. 2817, 186 L. Ed. 2d 876 (2013); *United States* v. *Ancheta*, 38 F.3d 1114, 1117 (9th Cir. 1994) ("The judge provided the jury with proper written instructions. We do not suggest that written instructions necessarily repair an error in oral instructions, since often oral instructions are used to cure typographical and other errors in written instructions. Nevertheless, here there is no reason to suppose that any juror was confused by the judge's slip of the tongue, and probably they understood him to say orally what he meant to say and did say in the written instructions."); *People* v. *Rodriguez*, 77 Cal. App. 4th 1101, 1113, 92 Cal. Rptr. 2d 236 (2000) ("It is generally presumed that the jury was guided by the written instructions. . . . The written version of jury instructions

governs any conflict with oral instructions. . . . Consequently, as long as the court provides accurate written instructions to the jury to use during deliberations, no prejudicial error occurs from deviations in the oral instructions." [Citations omitted; internal quotation marks omitted.]).

Additionally, reviewing courts are less willing to conclude that a discrepancy between written and oral instructions constitutes reversible error where: (1) defense counsel fails to object to the discrepancy; *United States* v. *Ancheta*, supra, 38 F.3d 1117 ("It was incumbent upon defense counsel to object if the judge erroneously instructed the jury . . . because the slip of the tongue could easily have been corrected before the jury retired to deliberate. The absence of objection suggests that the mistake was not noticeable or confusing."); and (2) counsel, the parties, the court, and the jury all fail to notice the discrepancy; *United States* v. *Jones*, supra, 468 F.3d 710 ("The fact that defense counsel as well as the experienced [trial] judge were unperturbed by the error, if they noticed it at all, weighs heavily. . . . If there had been an indication that anyone in the courtroom—counsel, parties, or jurors—was confused, we might find this a more difficult question." [Citations omitted.]).

Here, because the defendant did not object to the discrepancy between the written and oral instructions, his claim is unpreserved. However, his claim is reviewable because the first two *Golding* prongs are satisfied. The record is adequate for review, and the defendant's claim that the instruction diluted the state's burden of proof is of constitutional magnitude. We conclude, however, that the defendant has failed to satisfy *Golding*'s third prong because he has not demonstrated the existence of a constitutional violation that deprived him of a fair trial. When viewed as a whole, the court's oral instruction reasonably would not have misled the jury.

Our review of the record convinces us that there is no reasonable possibility that the jury was confused by the court's use of "will" instead of "would." The court informed the jury that it would be reading its instructions from a written version of the instructions. Copies of those written instructions, which accurately used "would" instead of "will" in describing reasonable doubt, were given to the jury to use during deliberations. After the court had read its oral instructions, defense counsel did not object to its use of "will." Indeed, there is no indication that defense counsel, the state, or the court itself noticed the errant use of the word "will."

Moreover, after the case was submitted to the jury, the jury did not request any clarification as to the discrepancy relating to "will" and "would," and it did not ask any questions regarding reasonable doubt and the burden of proof. Finally, in reviewing the entirety of the court's oral and written instructions, we conclude

that both sets of charges adequately explained the principles governing burden of proof, the presumption of innocence, and reasonable doubt by using several accurate descriptions of those concepts.[5] Accordingly, in the circumstances in this case, we conclude that it was not reasonably possible that the jury was misled by a single word in the court's jury instructions.

## II

## MOTION TO SUPPRESS EVIDENCE

The defendant's second claim is that the trial court improperly denied his motion to suppress evidence that was seized in a warrantless search of his residence. The defendant contends that such evidence was obtained in violation of the fourth and fourteenth amendments to the United States Constitution[6] and article first, § 7, of the Connecticut Constitution.[7] Specifically, he contends that a warrantless search of a parolee's residence that fails to comply with administrative directives promulgated by the Department of Correction (department) is unconstitutional, even if the parolee had previously executed an agreement authorizing such searches as a condition of his parole. The state's principal response is that we should not review the defendant's federal and state constitutional claims because they are moot. Specifically, it argues that on appeal the defendant fails to challenge an independent basis supporting the trial court's denial of his motion to suppress, namely, the trial court's finding that the defendant verbally consented to the search. We agree with the state.[8]

The following additional facts and procedural history are relevant to our resolution of this claim. Prior to trial, the defendant filed a motion to suppress evidence that was seized in a warrantless search of his residence, including 16.529 grams of crack cocaine. In that motion, the defendant's principal argument was that the search was unconstitutional because it was made without a warrant and did not comply with administrative directives promulgated by the department. He also asserted that he had not consented, verbally or in writing, to the search. After a two day evidentiary hearing, the trial court made the following factual findings.

"On December 11, 2012, [in the course of executing a search and seizure warrant for the residence of . . . Sweeney, members of the Middletown police force] encountered a vehicle being operated by [the defendant]. . . . Parole Officer Skarzynski, who assisted in the execution of the search and seizure warrant, knew [the defendant,] as [the defendant] was previously on his caseload. . . . [Skarzynski also] was aware that [the defendant] was on lifetime parole. . . . Skarzynski spoke with [the defendant] and obtained his verbal consent to . . . conduct a search of his residence. . . .

"Middletown police officers transported [the defendant] to his residence and room within his boarding

house. . . . Skarzynski made a phone call to his . . . supervisor, [the defendant's] current parole officer, and [the supervisor of the defendant's current parole officer,] requesting their authorization to search [the defendant's] room. . . . [A]ll [three] gave their verbal consent. When inside the residence . . . Skarzynski . . . [and] Middletown police detectives . . . conducted a search of [the defendant's] bedroom. [U]nder the bed a safe was located . . . where a large amount of crack cocaine was found."

In a written memorandum of decision, the court denied the defendant's motion to suppress the seized evidence. The court articulated two grounds in support of its ruling. First, it rejected the defendant's argument that a warrantless search of a parolee's residence that fails to comply with the department's administrative directives is unconstitutional, even if the parolee had previously executed an agreement authorizing such searches as a condition of his parole. Beginning with a review of the relevant case law, the court noted that "[a]s a parolee, a defendant has a reduced expectation of privacy which allows a warrantless search of his person and residence by his parole officer." The court then found that the defendant gave written consent to the search by executing an agreement called "Conditions of Parole," which was submitted by the state as an exhibit. That agreement, which was signed by the defendant on February 25, 2010, provided in relevant part: "You shall be required to submit to a search of your person, possessions, vehicle, business, residence, or any area under your control at any time, announced or unannounced, with or without cause by parole or its agent to verify your compliance with the conditions of your parole."[9]

The court's second ground for denying the defendant's motion to suppress was its finding that the defendant verbally consented to the search: "[The defendant] not only consented in writing to the warrantless search of his residence as a condition of his parole on February 25, 2010, he also gave his verbal consent to . . . Skarzynski on December 11, 2012."

On appeal, the defendant challenges only the first of the trial court's two grounds for denying the motion to suppress. That is, he again presents the argument that a warrantless search of a parolee's residence that fails to comply with the department's administrative directives is unconstitutional, even if the parolee previously had executed an agreement authorizing such searches as a condition of his parole.[10] The defendant does not challenge, however, the court's finding that he verbally consented to the search. Because the finding regarding the defendant's verbal consent constitutes an unchallenged independent basis for the court's ruling, we are compelled conclude that the defendant's claim on appeal is moot. Accordingly, we decline to review the

defendant's claim.

We set forth the relevant legal principles regarding mootness. "Mootness is a question of justiciability that must be determined as a threshold matter because it implicates [this] court's subject matter jurisdiction. . . . The fundamental principles underpinning the mootness doctrine are well settled. We begin with the four part test for justiciability established in *State* v. *Nardini,* 187 Conn. 109, 445 A.2d 304 (1982). . . . Because courts are established to resolve actual controversies, before a claimed controversy is entitled to a resolution on the merits it must be justiciable. Justiciability requires (1) that there be an actual controversy between or among the parties to the dispute . . . (2) that the interests of the parties be adverse . . . (3) that the matter in controversy be capable of being adjudicated by the judicial power . . . and (4) that the determination of the controversy will result in practical relief to the complainant. . . .

"[I]t is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from *the determination of which no practical relief can follow.* . . . In determining mootness, the dispositive question is whether a successful appeal would benefit the plaintiff or defendant in any way. . . .

"Where an appellant fails to challenge all bases for a trial court's adverse ruling on his claim, even if this court were to agree with the appellant on the issues that he does raise, we still would not be able to provide [him] any relief in light of the binding adverse finding[s] [not raised] with respect to those claims. . . . Therefore, when an appellant challenges a trial court's adverse ruling, but does not challenge all independent bases for that ruling, the appeal is moot." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Lester*, 324 Conn. 519, 526–27, 153 A.3d 647 (2017).

In *State* v. *Lester*, our Supreme Court held that the defendant's appeal from his conviction on the basis of an adverse evidentiary ruling was moot because he did not challenge all of the independent bases supporting the ruling. Id., 528. In that case, the state filed a motion in limine to preclude the defendant from introducing evidence of a supposedly false prior allegation of sexual abuse that the eight year old victim made against another person when she was five years old. Id., 521, 523. "[T]he trial court granted the state's motion . . . to exclude evidence of the victim's prior allegation . . . on the grounds that: it was not admissible under the rape shield statute because the defendant had not provided credible evidence that it was false; it was remote in time; it was dissimilar from the victim's allegation against the defendant; and it was a collateral issue that would confuse the jury." Id., 527.

On appeal, the defendant in *Lester* challenged only one of the four grounds on which the trial court relied in its evidentiary ruling, namely, that evidence of the allegation was inadmissible under the rape shield statute. Id., 524–25. Our Supreme Court reasoned that the other three grounds were independent bases supporting the court's ruling because they were responses to the state's separate and distinct evidentiary objections pertaining to relevancy and probative value. Id., 527–28. Thus, the court concluded that the defendant's failure to challenge those three grounds precluded appellate review of his claim that the trial court incorrectly applied the rape shield statute: "Because there are independent bases for the trial court's exclusion of the evidence of the prior allegation . . . that the defendant has not challenged in this appeal, even if this court were to find that the trial court improperly applied the rape shield statute, we could grant no practical relief to the defendant." Id., 528; see also *State* v. *A.M.*, 156 Conn. App. 138, 141 n.2, 111 A.3d 974 (2015) (unchallenged independent basis rendered claim on appeal moot where trial court admitted forensic interview of victim under three separate exceptions to hearsay rule but defendant challenged trial court's ruling on two exceptions), aff'd on other grounds, 324 Conn. 190, 152 A.3d 49 (2016).

In the present case, the trial court denied the defendant's motion to suppress on the following two grounds: (1) by executing an agreement authorizing searches of his residence as a condition of his parole, the defendant gave written consent to the warrantless search at issue; and (2) the defendant gave verbal consent to Skarzynski immediately before the warrantless search at issue occurred. Although not challenged by the defendant in this appeal, the second of those grounds, his verbal consent, is an independent basis supporting the trial court's denial of the defendant's motion to suppress. See *State* v. *Nowell*, 262 Conn. 686, 699, 817 A.2d 76 (2003) ("[i]t is . . . well settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search [or seizure] that is conducted pursuant to consent" [internal quotation marks omitted]); *State* v. *Vaught*, 157 Conn. App. 101, 121, 115 A.3d 64 (2015) (warrantless search of residence constitutional where trial court found that homeowner gave valid verbal consent).

The trial court's finding that the defendant verbally consented to the search is wholly dispositive of the defendant's motion to suppress, regardless of whether it erred in ruling on the defendant's other arguments that the search was unconstitutional. That is, once the defendant verbally consented to the search, the need for law enforcement to obtain a warrant or comply with the department's administrative directives was obviated. See, e.g., *Schneckloth* v. *Bustamonte*, 412 U.S. 218,

222, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973) ("a search authorized by consent is *wholly* valid" [emphasis added]). The defendant does not challenge the court's finding that he verbally consented to the search in this appeal. Consequently, because the defendant has failed to challenge that independent basis supporting the trial court's denial of his motion to suppress, even if this court were to rule in his favor on the claim he presents on appeal, we could grant him no practical relief. Accordingly, the defendant's claim is moot.

The appeal is dismissed as moot with respect to the defendant's claim that the trial court improperly denied his motion to suppress evidence; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] It appears that there was some confusion in the trial court proceedings regarding the defendant's first name. The state's substituted long form information charged him as "James E. Holley, a.k.a., Ever Lee Holley," but the proceedings in the trial court were captioned as *State* v. *Ever Lee Holley*. In its appellate brief, the state now refers to the defendant as "Ever Lee Holley, also known as James Holley." Conversely, the defendant asserts in his appellate brief that his birth name is actually "James Holley." Specifically, he notes that "[a]t sentencing it was determined that the name on [the defendant's] birth certificate is 'James.'" A review of the sentencing transcript reveals that the defendant appears to assert the opposite of what the presentence investigation report discovered with respect to his first name. The trial court stated at the sentencing hearing: "Several discrepancies have arisen regarding Mr. Holley's name, he's been using his dead brother's name of James as an alias for decades, *but his birth name is Ever Lee Holley*." (Emphasis added.) In any event, because the case was docketed in the trial court and in this court as *State of Connecticut* v. *Ever Lee Holley*, and neither party has filed a motion to correct the defendant's name, the case retains its original caption.

[2] In a part B information, the state also had charged the defendant with possession of a narcotic substance with the intent to sell as a subsequent offender. Although the jury found the defendant guilty of being a subsequent offender, the court granted the defendant's motion for acquittal with respect to this part of the jury's verdict.

[3] Additionally, the United States Supreme Court has endorsed a description of reasonable doubt that virtually is identical to the one challenged by the defendant in this case. See *Holland* v. *United States*, 348 U.S. 121, 140, 75 S. Ct. 127, 99 L. Ed. 150 (1954) (citing with approval instruction given in *Bishop* v. *United States*, 107 F.2d 297, 303 [D.C. Cir. 1939], which defined reasonable doubt as "doubt [that] would cause reasonable men to hesitate to act upon it in matters of importance to themselves").

[4] Although in closing argument defense counsel described reasonable doubt as a "doubt that, in your own serious affairs, you *would* heed," he did not take an exception or request clarification when the court subsequently used *will* instead of would in its instructions. We also note that the state did not make an argument with respect to either word during its closing argument.

[5] We also note that the United States Court of Appeals for the Second Circuit recently held that an arguably more problematic discrepancy between written and oral instructions did not confuse the jury. *United States* v. *Rodriguez*, supra, 651 Fed. Appx. 47–48 (no constitutional violation where oral charge instructed jury to find defendant not guilty if "*defendant* ha[d] failed to prove [his self-defense claim] beyond a reasonable doubt" because written charge correctly instructed jury that *government* had burden of disproving defendant's claim of self-defense [emphasis in original]).

[6] The fourth amendment to the United States constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

The fourth amendment's protection against unreasonable searches and

seizures is made applicable to the states through the due process clause of the fourteenth amendment to the United States constitution. See *Mapp* v. *Ohio*, 367 U.S. 643, 655, 81 S. Ct. 1684, 6 L. Ed. 2d 1081 (1961).

[7] Article first, § 7, of the constitution of Connecticut provides: "The people shall be secure in their persons, houses, papers and possessions from unreasonable searches or seizures; and no warrant to search any place, or to seize any person or things, shall issue without describing them as nearly as may be, nor without probable cause supported by oath or affirmation."

[8] The state also argues that the defendant failed to preserve his state constitutional claims by not presenting an analysis pursuant to *State* v. *Geisler*, 222 Conn. 672, 610 A.2d 1225 (1992), to the trial court. Because we conclude that the defendant's state and federal constitutional claims both are moot, we need not address this preservation argument.

[9] The court also made a finding that the search had in fact "substantially complied with parole regulations" because Skarzynski "obtain[ed] authorization" from "his parole manager and the parole manager of [the defendant's] probation officer" before conducting the search.

[10] The defendant also argues that the court erroneously found that the search was conducted in "substantial" compliance with the department's administrative directives. See footnote 9 of this opinion.