STATE OF CONNECTICUT *v.* ALBERTO M.[1]
(AC 29270)

Harper, Robinson and Pellegrino, Js.

---

[1] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse and the crime of risk of injury to a child, we decline to use the defendant's full name or to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

Argued November 13, 2009—officially released March 23, 2010

*William B. Westcott*, for the appellant (defendant).

*Bruce R. Lockwood*, senior assistant state's attorney, with whom, on the brief, were *David I. Cohen*, state's

attorney, and *Richard J. Colangelo, Jr.*, senior assistant state's attorney, for the appellee (state).

*Opinion*

HARPER, J. The defendant, Alberto M., appeals from the judgment of conviction, rendered after a jury trial, of two counts of risk of injury to a child in violation of General Statutes § 53-21 (a) (2) and one count of sexual assault in the third degree in violation of General Statutes § 53a-72a (a) (1) (A).[2] The defendant claims that (1) the evidence did not support his conviction as to one count of risk of injury to a child and sexual assault in the third degree, (2) his conviction of one of the two counts of risk of injury to a child should be set aside because it was part of a legally and logically inconsistent verdict and (3) the court's reasonable doubt instruction deprived him of a fair trial. We affirm the judgment of the trial court.

The state alleged and presented evidence that the defendant sexually abused his daughter, the victim, during four separate incidents. The first incident occurred on November 6, 2003, shortly before the victim's thirteenth birthday. The state alleged that, during this incident, the defendant began to touch the victim while she and the defendant were sitting on a sofa watching television. Further, the state alleged that the defendant disregarded the victim's command that he stop touching her and forcibly engaged in penile-vaginal intercourse

---

[2] The defendant was also convicted, under counts nine and ten of the state's amended information, of one count of risk of injury to a child in violation of General Statutes § 53-21 (a) (1) and assault in the third degree in violation of General Statutes § 53a-61 (a) (1) in connection with conduct that occurred in September, 2006. The defendant does not raise any claims in connection with his conviction of these crimes, which were of a nonsexual nature. The jury returned a verdict of not guilty as to five other offenses. The court imposed a total effective sentence of fifteen years imprisonment, suspended after ten years, followed by twenty years of probation with special conditions.

with the victim. In connection with this incident, the jury returned a verdict of not guilty as to the crime of sexual assault in the first degree (count one) and found the defendant guilty of one count of risk of injury to a child (count two).

The state presented evidence that the second incident occurred in December, 2003, when the victim was thirteen years old. The state alleged that, during this incident, the defendant followed the victim into a bathroom and touched the victim's breasts, through her clothing. The state also alleged that the defendant rubbed his penis, which was inside of his clothing, against the victim's body, near her vagina. In connection with this incident, the jury found the defendant guilty of sexual assault in the third degree (count three) and one count of risk of injury to a child (count four).

The state presented evidence that the third incident occurred sometime during 2003 or 2004. The state alleged that, during this incident, the defendant engaged in penile-vaginal intercourse with the victim in her bedroom. The jury returned a not guilty verdict as to the crimes of sexual assault in the first degree (count five) and risk of injury to a child (count six) in connection with this incident.

The state presented evidence that the fourth incident occurred in February, 2006, when the victim was sixteen years old. The state alleged that, during this incident, which occurred in the victim's bedroom, the defendant forcibly engaged in penile-vaginal intercourse with the victim against her will. In connection with this incident, the jury returned a verdict of not guilty as to the crimes of sexual assault in the first degree (count seven) and risk of injury to a child (count eight). Additional facts will be set forth as relevant.

I

First, the defendant claims that the evidence did not support his conviction of sexual assault in the third

degree (count three) and risk of injury to a child (count four) in connection with the second incident of sexual assault alleged by the state.[3] We disagree.

At the outset, we note our standard of review. "In reviewing a sufficiency of the evidence claim, we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [trier of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . In evaluating evidence, the trier of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The trier may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . . This does not require that each subordinate conclusion established by or inferred from the evidence, or even from other inferences, be proved beyond a reasonable doubt . . . because this court has held that a [trier's] factual inferences that support a guilty verdict need only be reasonable. . . .

"[A]s we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the trier, would have resulted in an acquittal. . . . On

---

[3] Following the close of the state's case-in-chief and following the close of evidence, the defendant's attorney made a motion for a judgment of acquittal as to all counts of the state's substitute information. The defendant did not distinctly raise either aspect of the present claim in either of those motions, which the court denied. Nonetheless, the defendant's claim is reviewable on appeal. See, e.g., *State* v. *Roy*, 233 Conn. 211, 212–13, 658 A.2d 566 (1995); *State* v. *Cyrta*, 107 Conn. App. 656, 659–60, 946 A.2d 288, cert. denied, 288 Conn. 912, 954 A2d 185 (2008).

appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [trier's] verdict of guilty. . . . Furthermore, [i]n [our] process of review, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence." (Internal quotation marks omitted.) *State* v. *Morelli*, 293 Conn. 147, 151–52, 976 A.2d 678 (2009). Next, we turn to the essential elements of the separate offenses at issue to determine whether the state has proven its case beyond a reasonable doubt.

To sustain a conviction of sexual assault in the third degree in violation of § 53a-72a (a) (1) (A), as charged, the state bore the burden of proving beyond a reasonable doubt that the defendant (1) used force against the victim and (2) that his use of force was for the purpose of compelling the victim to submit to sexual contact. General Statutes § 53a-72a (a) (1) (A). General Statutes § 53a-65 (7) provides: " 'Use of force' means: (A) Use of a dangerous instrument; or (B) use of actual physical force or violence or superior physical strength against the victim." General Statutes § 53a-65 (3) provides: " 'Sexual contact' means any contact with the intimate parts of a person not married to the actor for the purpose of sexual gratification of the actor or for the purpose of degrading or humiliating such person or any contact of the intimate parts of the actor with a person not married to the actor for the purpose of sexual gratification of the actor or for the purpose of degrading or humiliating such person." General Statutes (Rev. to 2003) § 53a-65 (8) provides: " 'Intimate parts'

means the genital area, groin, anus, inner thighs, buttocks or breasts."

To sustain a conviction of risk of injury to a child in violation of § 53-21 (a) (2), as charged, the state bore the burden of proving beyond a reasonable doubt that (1) the defendant had contact with the intimate parts of a child under the age of sixteen and (2) this contact occurred in a sexual and indecent manner likely to impair the health or morals of such child. General Statutes § 53-21 (a) (2). The definition of "intimate parts" set forth previously applied to this offense. Our Supreme Court has held that the risk of injury to a child statute prohibits "sexual contact" as defined in § 53a-65 (3). See, e.g., *State* v. *James G.*, 268 Conn. 382, 415, 844 A.2d 810 (2004).

The state tried the case on the theory that the defendant touched one or both of the victim's breasts, through her clothing, and that the defendant rubbed his penis against the area of the victim's vagina, while his penis was under his clothing. With regard to the incident in December, 2003, the victim testified that she went into a bathroom at the family residence that she shared with the defendant and other members of her family. The victim testified that, at that time, she was wearing underwear, a bra, a shirt and pajama pants. The victim testified that the defendant followed her into the bathroom and, using his hands, began to touch her on her shirt "on [her] breast area." The victim left the bathroom for a brief time and, upon her return, the defendant reentered the bathroom. The victim testified: "Again, [the defendant is] touching me on my breast area, and he rubs his penis on me." The victim testified that the defendant rubbed his penis "[a]gainst [her] tummy and close to [her] vagina." The victim stated that the victim's penis felt hard and that it was inside of the defendant's clothing, which, at the time of the contact, consisted of pajamas and a T-shirt. The victim

also testified that the defendant's conduct caused her emotional harm and that immediately after the touching, she pushed the defendant away and stayed with her younger brother in the family residence until her mother returned home. The victim testified that in the days following the incident, she "wasn't the same girl," that she was upset with and disappointed in the defendant.

The defendant raises the same claim with regard to both offenses; namely, he argues that to demonstrate that sexual contact occurred, the state bore the burden of presenting "evidence of actual contact with the [victim's] intimate parts" and that the victim's testimony did not demonstrate that the degree of contact required for either offense had, in fact, occurred. There were two types of contact explicitly described by the victim, the touching of one or both of her breasts and the touching of an area close to her vagina. The state need only have proven that one type of touching described by the victim had occurred to sustain a conviction for the offenses at issue. As a preliminary matter, for purposes of determining whether sexual contact occurred, it is of no consequence in our analysis that the contact occurred through the victim's clothing rather than against her bare skin. See *In re Mark R.*, 59 Conn. App. 538, 542, 757 A.2d 636 (2000) (for purposes of determining whether sexual contact occurred it is irrelevant whether defendant made contact through clothing or with bare skin); *State* v. *Eric T.*, 8 Conn. App. 607, 613, 513 A.2d 1273 (1986) (same).

The defendant asserts that there was no evidence of contact with the victim's intimate parts because the victim merely had testified that the touching occurred on her "breast area" and "close to [her] vagina." As described previously, the statutory definition of "intimate parts" includes "the genital area" and breasts. The statute does not require touching of the genitals, and

we conclude that a reasonable view of the victim's testimony as a whole, especially her testimony that the defendant touched her "close to [her] vagina," supported a finding that the defendant touched the victim in her genital area. In so concluding, we observe that female genitalia includes the vagina. See Stedman's Medical Dictionary (28th Ed. 2006). Likewise, a reasonable view of the victim's testimony as a whole, especially her testimony that the defendant touched her on her "breast area," supported a finding that the defendant touched one or both of the victim's breasts. It belies a common sense evaluation of the victim's testimony to conclude that the victim had not described the touching of one or both of her breasts, and we conclude that the evidence supported such a finding. Concluding that the victim's testimony and the rational inferences drawn from the testimony supported a finding as to the essential element in dispute, which was shared by both offenses at issue, we reject the defendant's sufficiency of the evidence claim.

## II

Next, the defendant claims that the risk of injury to a child conviction under count two should be set aside on the ground that it is legally and logically inconsistent with the jury's not guilty verdict as to sexual assault in the first degree under count one. The defendant acknowledges that he did not preserve this claim for our review and affirmatively seeks review under the doctrine set forth in State v. Golding, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[4]

---

[4] A defendant can prevail on an unpreserved constitutional claim under Golding "only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) State v. Golding, supra, 213 Conn. 239–40.

Recently, in *State* v. *Arroyo*, 292 Conn. 558, 575–86, 973 A.2d 1254 (2009), cert. denied, 559 U.S. 911, 130 S. Ct. 1296, 175 L. Ed. 2d 1086 (2010), our Supreme Court revisited its prior jurisprudence concerning the reviewability of verdicts that are claimed to be either factually, logically or legally inconsistent. Clarifying this area of the law, the court held that inconsistency in verdicts, regardless of whether the inconsistency may be deemed factual, logical or legal in nature, is permissible. Id., 583. Furthermore, the court held that, like claims of factual or logical inconsistency, claims of legal inconsistency in verdicts are not reviewable. Id., 586. For these reasons, the defendant cannot demonstrate that either aspect of his claim is reviewable under *Golding*.

### III

Finally, the defendant claims that the court's reasonable doubt instruction diluted the state's burden of proof and impermissibly burdened him to prove his innocence. We disagree.

In its charge, the court instructed the jury concerning the presumption of innocence and the state's burden of demonstrating guilt beyond a reasonable doubt. The court stated that the state's burden applied to each and every element of the crimes charged. The court stated: "What does that mean, beyond a reasonable doubt? Now, the phrase reasonable doubt has no technical or unusual meaning. You can arrive at the real meaning of it by emphasizing the word reasonable. A reasonable doubt means a doubt based upon reason and common sense. It's a doubt which is something more than a guess or a surmise. It is not a conjecture or fanciful doubt or a doubt raised by one who questions simply for the sake of argument. It is not hesitation springing from feeling of sympathy or pity for the accused or members of his family or other persons who might in any way be affected by your verdict.

"A reasonable doubt, in other words, is a real doubt, an honest doubt, a doubt which has its foundation in the evidence or lack of evidence. It is one for which you can, in your own mind, conscientiously give a reason. A reasonable doubt is the kind of doubt upon which reasonable persons like yourselves in the more serious and important affairs of your own lives would hesitate to act.

"Now, of course, absolute certainty in the affairs of life is almost never attainable, and the law does not require absolute certainty on the part of the jury before you return a verdict of guilty. The state does not have to prove guilt beyond all doubt or to a mathematical or absolute certainty. What the law does require, however, is that after hearing all the evidence, if there is something in this evidence or lack of evidence which leaves in the minds of the jury as reasonable men and women a reasonable doubt about the guilt of the accused, then the accused must be given the benefit of that doubt and [be] acquitted.

"Proof beyond a reasonable doubt is proof which precludes every reasonable hypothesis except guilt, is consistent with guilt and is inconsistent with any other reasonable conclusion. *You must, however, distinguish between a reasonable hypothesis and a possible hypothesis.* Proof of guilt must exclude *every reasonable supposition of innocence. A mere possible hypothesis of innocence will not suffice. However, if you can in reason reconcile all the facts proved with any reasonable theory consistent with the innocence* of the accused, then you cannot find him guilty. On the other hand, if you find that the proven facts do establish the guilt of the accused beyond a reasonable doubt, then the proper verdict would be guilty." (Emphasis added.)

The defendant asserts that the portion of the court's reasonable doubt instruction that appears in italics in

the preceeding paragraph improperly suggested that he carried the burden of establishing his innocence in light of the facts of the case. The defendant asserts that the instruction diluted the state's burden of proof because, rather than emphasizing that the defendant must be found not guilty if the state failed to carry its burden of proof, it "reasonably could have led the jury to believe that it would have to believe that the defendant was factually innocent before it could find him not guilty of the crimes alleged." The defendant did not preserve this issue for our review and affirmatively seeks review under the doctrine set forth in *State* v. *Golding*, supra, 213 Conn. 239–40.

The claim is reviewable under *Golding* because the record is adequate for review and the claim that the court's reasonable doubt instruction diluted the state's burden of proof and impermissibly burdened the defendant is of constitutional magnitude. See *State* v. *Schiappa*, 248 Conn. 132, 165–66, 728 A.2d 466 (discussing types of instructional claims amenable to review under *Golding*), cert. denied, 528 U.S. 862, 120 S. Ct. 152, 145 L. Ed. 2d 129 (1999). "The standard of review for claims of instructional impropriety is well established. [I]ndividual jury instructions should not be judged in artificial isolation, but must be viewed in the context of the overall charge. . . . The pertinent test is whether the charge, read in its entirety, fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . Thus, [t]he whole charge must be considered from the standpoint of its effect on the [jurors] in guiding them to the proper verdict . . . and not critically dissected in a microscopic search for possible error. . . . Accordingly, [i]n reviewing a constitutional challenge to the trial court's instruction, we must consider the jury charge as a whole to determine whether it is reasonably possible that the instruction misled the jury. . . . In

other words, we must consider whether the instructions [in totality] are sufficiently correct in law, adapted to the issues and ample for the guidance of the jury." (Internal quotation marks omitted.) *State* v. *Wallace*, 290 Conn. 261, 272–73, 962 A.2d 781 (2009).

The state argues, and we agree, that *State* v. *Mussington*, 87 Conn. App. 86, 864 A.2d 75, cert. denied, 273 Conn. 914, 870 A.2d 1084 (2005), controls our resolution of the defendant's claim. In *Mussington*, this court held that instructional language *identical* to that challenged here, when evaluated in the context of a court's overall charge, which "made abundantly clear to the jury that the defendant did not have to prove his innocence and that the burden rested on the state throughout the trial to prove guilt beyond a reasonable doubt," was not improper. Id., 91. As was the case in *Mussington*, we have evaluated the specific instructional language challenged by the defendant in light of the entire charge. Likewise, we conclude that it is unreasonable to interpret the charge in the manner suggested by the defendant because the court unambiguously instructed the jury, on numerous occasions, that the burden of proof beyond a reasonable doubt rested solely with the state, that the state's failure to meet its burden of proof required a verdict of not guilty and that the defendant did not bear the burden of proving his innocence. The defendant does not distinguish *Mussington* from the present case, and, based on this court's analysis in *Mussington*, as well as the rationale of the cases cited therein, we conclude that the claim fails under *Golding*'s third prong.

The judgment is affirmed.

In this opinion the other judges concurred.