******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# STATE OF CONNECTICUT *v.* HUGO ROSA
## (AC 46610)

Alvord, Elgo and Westbrook, Js.

### *Syllabus*

Convicted of the crimes of risk of injury to a child and sexual assault in the fourth degree as a result of his abuse of the minor victim, T, the defendant appealed, claiming, inter alia, that the trial court improperly limited its disclosure of certain of T's confidential medical and mental health records and refused to conduct a second in camera review of those records in light of the Supreme Court's decision in *State* v. *Juan A. G.-P.* (346 Conn. 132). *Held*:

The evidence was sufficient to support the defendant's conviction with respect to one count each of risk of injury to a child and fourth degree sexual assault, predicated on the defendant's conduct in touching T in her buttock area, as T's testimony at trial was consistent with her statements during her forensic interview by a clinical social worker describing how the defendant had contact with her buttock while she was asleep.

The trial court did not abuse its discretion in admitting into evidence portions of a video recording of T's forensic interview with a clinical social worker under the medical diagnosis and treatment exception to the hearsay rule in a provision (§ 8-3 (5)) of the Connecticut Code of Evidence, as an objective observer reasonably could conclude that T's disclosures during the interview, in particular her statement regarding DNA, were made, at least in part, for the purpose of receiving medical treatment and were pertinent to that end.

The trial court did not abuse its discretion by declining to release portions of T's confidential medical and mental health records or by redacting portions of those records it did disclose, and, in rejecting the defendant's request that it conduct a second review of those records in light of *Juan A. G.-P.*, the court correctly concluded that *Juan A. G.-P.* did not alter the standard applicable to in camera review of confidential records and indicated that, in conducting its review, it had searched the records for both relevant exculpatory and inculpatory material.

Argued February 11—officially released June 10, 2025

### *Procedural History*

Substitute information charging the defendant with five counts of the crime of risk of injury to a child and two counts of the crime of sexual assault in the fourth degree, brought to the Superior Court in the judicial

district of New Haven, geographical area number seven at Meriden, and tried to the jury before *Chaplin, J.*; thereafter, the court granted in part the defendant's motion for a judgment of acquittal and denied the defendant's motion for in camera review of certain confidential records; verdict and judgment of guilty of three counts of risk of injury to a child and two counts of sexual assault in the fourth degree, from which the defendant appealed to this court. *Affirmed*.

*Trent A. LaLima*, assigned counsel, with whom was *Virginia Gillette*, assigned counsel, for the appellant (defendant).

*Timothy J. Sugrue*, assistant state's attorney, with whom, on the brief, were *John P. Doyle, Jr.*, state's attorney, and *Nichol Peco*, senior assistant state's attorney, for the appellee (state).

*Opinion*

WESTBROOK, J. The defendant, Hugo Rosa, appeals from the judgment of conviction, rendered after a jury trial, of two counts of sexual assault in the fourth degree in violation of General Statutes § 53a-73a (a) (1), two counts of risk of injury to a child in violation of General Statutes § 53-21 (a) (2), and one count of risk of injury to a child in violation of § 53-21 (a) (1). On appeal, the defendant claims that (1) there was insufficient evidence for the jury to reasonably find that he had contact with the "buttock area" of the victim, T,[1] as

---

[1] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse and the crime of risk of injury to a child, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

Moreover, in accordance with federal law; see 18 U.S.C. § 2265 (d) (3) (2018), as amended by the Violence Against Women Act Reauthorization Act of 2022, Pub. L. No. 117-103, § 106, 136 Stat. 49, 851; we decline to identify any person protected or sought to be protected under a protection order, protective order, or a restraining order that was issued or applied for, or others through whom that person's identity may be ascertained.

alleged in the information with respect to one count of sexual assault in the fourth degree and one count of risk of injury to a child under § 53-21 (a) (2); (2) the trial court improperly admitted portions of T's video-recorded forensic interview under the medical diagnosis and treatment exception to the rule against hearsay; and (3) the trial court improperly limited the disclosure of certain of T's confidential medical and mental health records following an in camera review of those records.[2] We disagree and, accordingly, affirm the judgment of the court.

The following facts, which the jury reasonably could have found on the basis of the evidence presented, and procedural history are relevant to our resolution of this appeal. In April, 2015, the defendant began sharing a residence with his girlfriend, L, and her two children, T and E, when T was ten years old and E was five years old. During this time, T and E visited their biological father every other weekend, and L worked night shifts from 6 p.m. until 12 a.m. In March, 2016, T and E's brother, J, was born, and he also lived with the defendant and L.

One night in June, 2017, while L was working, T, who was then eleven years old, woke up while lying on her stomach with her underwear pulled down to her midthigh and the defendant rubbing directly underneath her left buttock. Before T had gone to sleep, her underwear had been fully on. T told L about the incident, but L did nothing about it. On another occasion, when T was twelve years old, she awoke to the defendant rubbing her vaginal area. T told L about this incident as

---

[2] Although the defendant addresses his claim of evidentiary insufficiency last in his brief to this court, we will address that claim first because, if he were to prevail on that claim, he would be entitled to a directed judgment of acquittal, rather than to a new trial, and it would not be necessary to address his other claims. See, e.g., *State* v. *White*, 215 Conn. App. 273, 276 n.1, 283 A.3d 542 (2022), cert. denied, 346 Conn. 918, 291 A.3d 108 (2023).

well, but L, again, took no action. In October, 2018, at approximately 5 a.m., T was asleep on a couch with E when she awoke to the sound of a picture frame falling and saw the defendant walking away from her. T looked down and noticed that her shirt was "rolled up just above [her] chest." E told T that he had seen the defendant take a blanket off T, roll up her shirt, and touch her breasts. T immediately told L what had happened, and, on this occasion, L confronted the defendant. The defendant, however, denied what had happened.

On April 24, 2019, E was in the home, standing on a counter that had lights hanging overhead. E was swinging a toy around the lights when, according to T, the defendant said to E, "if you break that I'm going to break your face." T then took E to a bedroom, locked the door, and called their father. During this phone call, T told her father that the defendant had been touching her inappropriately. On April 26, 2019, T's father picked up T and E for his scheduled visitation and went to the Meriden Police Department, where T provided a statement regarding the defendant's abuse.

On May 30, 2019, on the basis of a referral from the Department of Children and Families (department), T met with Maria Silva, a clinical social worker at the Yale Child Abuse Clinic, for a forensic interview to assess T's safety, mental health, and medical well-being. The interview was observed by Silva's colleagues from the clinic, as well as the police and a department employee. After the interview, Silva informed the clinic's nurse practitioner that T was ready to be seen for an assessment of any medical needs, and, through T's father, referred T to a trauma therapy program to connect her with both short-term and long-term mental health services.[3]

---

[3] T later received treatment from Julia Savio, a licensed marriage and family therapist, and Mariyah Charlton, a clinical mental health counselor, to whom T was referred due to depression, suicidal ideations, self-injurious behavior, and trauma as a result of sexual abuse.

Following the forensic interview, both the department and the police conducted concurrent investigations into T's allegations.[4] On October 11, 2019, the police arrested the defendant, and, on December 9, 2019, he was charged in a long form information with two counts of sexual assault in the fourth degree in violation of § 53a-73a[5] and five counts of risk of injury to a child in violation of § 53-21.[6] Counts one and three charged the defendant with sexual assault in the fourth degree in violation of § 53a-73a (a) (1) (A) for, respectively, touching T in her buttock area and rubbing her vaginal area. Counts two and four charged him with risk of injury to a child in violation of § 53-21 (a) (2) for, respectively, touching T in her buttock area and rubbing her vaginal area. Counts five, six, and seven, charged him with risk of injury to a child in violation of § 53-21 (a) (1) for, respectively, rolling up T's shirt

[4] According to the police officer's affidavit submitted with the arrest warrant application for the defendant, which was not presented to the jury, the department substantiated allegations of physical neglect by L of T and E, and also substantiated allegations of sexual abuse by the defendant regarding T.

[5] General Statutes § 53a-73a provides in relevant part: "(a) A person is guilty of sexual assault in the fourth degree when: (1) Such person subjects another person to sexual contact who is (A) under thirteen years of age and the actor is more than two years older than such other person . . . ."

[6] General Statutes § 53-21 (a) provides in relevant part: "Any person who (1) wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that the life or limb of such child is endangered, the health of such child is likely to be injured or the morals of such child are likely to be impaired, or does any act likely to impair the health or morals of any such child, or (2) has contact with the intimate parts, as defined in section 53a-65, of a child under the age of sixteen years or subjects a child under sixteen years of age to contact with the intimate parts of such person, in a sexual and indecent manner likely to impair the health or morals of such child . . . shall be guilty of (A) a class C felony for a violation of subdivision (1) . . . of this subsection, and (B) a class B felony for a violation of subdivision (2) of this subsection, except that, if the violation is of subdivision (2) of this subsection and the victim of the offense is under thirteen years of age, such person shall be sentenced to a term of imprisonment of which five years of the sentence imposed may not be suspended or reduced by the court."

and exposing her breasts, physically assaulting E, and physically assaulting J. The defendant entered not guilty pleas on all counts.

The case was tried to a jury beginning on February 8, 2023. On February 9, 2023, after the close of the state's case-in-chief, defense counsel made an oral motion for a judgment of acquittal as to counts one, two, six, and seven, arguing that the evidence presented did not support the factual allegations in the information. After hearing counsel's arguments, the state conceded that the court should dismiss count seven but otherwise opposed the motion. Thereafter, the court, *Chaplin, J.,* dismissed count seven but denied the motion as to counts one, two, and six. On February 10, 2023, the state filed a substitute long form information reflecting this change.

On February 14, 2023, the jury found the defendant guilty of both counts of sexual assault, both counts of risk of injury to a child in violation of § 53-21 (a) (2), and the count of risk of injury to a child in violation of § 53-21 (a) (1) predicated on the defendant's having exposed T's breasts. The jury found the defendant not guilty on the remaining count of risk of injury predicated on his alleged physical assault of E. The court sentenced the defendant to a total effective term of twenty years of incarceration, suspended after seven years, with ten years of probation and lifetime sex offender registration. This appeal followed. Additional facts will be set forth as necessary.

I

We first address the defendant's claim that the evidence was insufficient to support his conviction with respect to counts one and two, which allege, respectively, sexual assault in the fourth degree in violation of § 53a-73a (a) (1) and risk of injury to a child in violation of § 53-21 (a) (2). Specifically, he asserts that

no evidence was admitted from which the jury reasonably could have found that he had contact with T's "buttock area" as alleged in the information as the factual predicate for those counts. We disagree.

We begin our analysis with well settled legal principles governing our review of evidentiary insufficiency claims, including our standard of review. "In reviewing the sufficiency of the evidence to support a criminal conviction we apply a [two part] test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

"[T]he jury must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, [but] each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt. . . .

"[P]roof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the [finder of fact], would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of

innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [finder of fact's] verdict of guilty." (Internal quotation marks omitted.) *State* v. *Nichols*, 226 Conn. App. 359, 374–75, 317 A.3d 861 (2024).

Counts one and two of the operative long form information charged the defendant with sexual assault and risk of injury on factual allegations that "the defendant touched [T] . . . in her buttock area." Section 53a-73a (a) (1) provides in relevant part that a person is guilty of sexual assault in the fourth degree if that person "subjects another person to sexual contact . . . ." Sexual contact, as that term is used throughout part VI of the Penal Code governing sex offenses, is defined in General Statutes (Rev. 2017) § 53a-65 (3), which provides in relevant part that sexual contact means "any contact with the intimate parts of a person not married to the actor for the purpose of sexual gratification of the actor or for the purpose of degrading or humiliating such person or any contact of the intimate parts of the actor with a person not married to the actor for the purpose of sexual gratification of the actor or for the purpose of degrading or humiliating such person." Section 53a-65 further defines "intimate parts" to mean "the genital area or any substance emitted therefrom, groin, anus or any substance emitted therefrom, inner thighs, buttocks or breasts." General Statutes § 53a-65 (8). Moreover, § 53-21 (a) (2) provides in relevant part that a person is guilty of risk of injury to a child if that person "has contact with the intimate parts, as defined in section 53a-65, of a child under the age of sixteen years or subjects a child under sixteen years of age to contact with the intimate parts of such person, in a sexual and indecent manner likely to impair the health or morals of such child . . . ." Accordingly, proof of contact with an intimate part of T's body, specifically,

her buttock, was an essential element of both counts one and two.

Contrary to the defendant's assertion on appeal, however, there was sufficient evidence presented to the jury from which it reasonably could have found, beyond a reasonable doubt, that the defendant had contact with T's buttock. T testified at trial that, when she was approximately eleven years old, "there was a night where I'd wake up and my underwear was, like, down. And he was—I was [lying] on my stomach and he was rubbing this, like, the underneath my butt, like, where my thigh, the back of my thigh. Just, like, rubbing on my body. . . . Just below—just below my butt." This testimony was consistent with her statements at the forensic interview, admitted at trial,[7] during which she told Silva that she "woke up with my underwear down and [the defendant] was rubbing my leg back here." Contemporaneously with that statement, T placed a mark on a line of an anatomically correct drawing that represented the crease between the bottom of the buttock and the top of the thigh, reiterating that the defendant had touched her on the "line between my butt and my leg. My thigh." Silvia clarified with T where the defendant had touched her, asking: "Butt and thigh?" T responded: "Yes." The defendant argues that the only reasonable inference to be drawn from this evidence is that he had touched T in the buttocks area but not

---

[7] Although the defendant challenges on appeal the admission of the forensic interview video, a claim we reject in part II of this opinion, "in evaluating a claim of evidentiary insufficiency, we consider the totality of the evidence that was before the trier of fact, including any evidence claimed to have been improperly admitted by the court." *In re Alizabeth L.-T.*, 213 Conn. App. 541, 604 n.26, 278 A.3d 547 (2022), citing *State* v. *Chemlen*, 165 Conn. App. 791, 818, 140 A.3d 347 ("[A]ppellate review of the sufficiency of the evidence . . . properly includes hearsay evidence even if such evidence was admitted despite a purportedly valid objection. Claims of evidentiary insufficiency in criminal cases are always addressed independently of claims of evidentiary error." (Internal quotation marks omitted.)), cert. denied, 322 Conn. 908, 140 A.3d 977 (2016).

on the actual buttocks. We reject such a narrow view of the evidence.

"[J]urors, in deciding cases, are not expected to lay aside matters of common knowledge or their own observations and experiences, but rather, to apply them to the facts as presented to arrive at an intelligent and correct conclusion." (Internal quotation marks omitted.) *State* v. *Elmer G.*, 176 Conn. App. 343, 376, 170 A.3d 749 (2017), aff'd, 333 Conn. 176, 214 A.3d 852 (2019). T's description of the area where the defendant had touched her encompassed the area of the buttocks where it meets the upper thigh. She indicated that same area on the anatomical drawing. When asked by Silva to clarify whether the defendant had touched her on the "butt *and* thigh"; (emphasis added); T answered, "yes," from which the jury was free to conclude that he had touched both areas of her body. Construing the evidence in the light most favorable to sustaining the verdict, as we must, we view the aforementioned evidence alone as supporting a reasonable inference that the defendant had touched T on the buttocks. See *State* v. *Alberto M.*, 120 Conn. App. 104, 111, 991 A.2d 578 (2010) (victim's testimony that defendant touched her " 'breast area' " was sufficient to support jury's finding that defendant made contact with victim's breasts).

Moreover, T also testified that her underwear was on when she fell asleep, and it is both logical and common sense that, to pull down her underwear to expose her buttocks and upper thigh, the defendant would have made contact with T's buttocks. See id., (irrelevant whether contact was made through victim's clothing rather than against bare skin). We agree with the state that "a person who is engaged in surreptitiously pulling down a sleeping child's underpants in the dead of night, exposing her buttocks, is acting crudely in haste, unconcerned with doing so delicately enough to ensure that his hand or hands touch only the garment, but not the

child's flesh." Because, on the basis of the totality of the evidence presented, it was reasonable for the jury to infer that the defendant had touched T's buttock, an intimate part of her body, we reject the defendant's sufficiency of the evidence claim.

## II

The defendant next claims that the trial court abused its discretion by admitting into evidence portions of T's forensic interview. Specifically, the defendant argues that the court should have excluded the videotape of the interview as hearsay because it did not meet the medical diagnosis and treatment exception to the rule against hearsay set forth in § 8-3 of the Connecticut Code of Evidence.[8] We disagree.

The following additional facts and procedural history are relevant to our discussion of this claim. During its direct examination of Silva regarding her forensic examination of T, the state sought to introduce into evidence the videotape of the forensic interview. Defense counsel objected to the admission of the videotape on hearsay grounds. The state countered that the videotape was admissible under the medical diagnosis and treatment exception to the hearsay rule.

---

[8] The defendant also argues, as an aspect of his claim, that the court abused its discretion because it admitted the videotape without first viewing and considering its content. We agree with the state that this aspect of the defendant's evidentiary claim was not preserved because the defendant never asked the court to view the videotape prior to ruling on its admission and did not raise any objection to its admission on the ground that the court had not viewed it prior to ruling. "In order to preserve an evidentiary ruling for review, trial counsel must object properly. . . . In objecting to evidence, counsel must properly articulate the basis of the objection so as to apprise the trial court of the precise nature of the objection and its real purpose, in order to form an adequate basis for a reviewable ruling." (Internal quotation marks omitted.) *State* v. *Jorge P.*, 308 Conn. 740, 753, 66 A.3d 869 (2013). Because the defendant failed to properly preserve this aspect of his claim, we decline to review it.

The court heard argument on the objection outside the presence of the jury. Defense counsel argued that the medical exception did not apply in this case because T's forensic interview was conducted only for investigative purposes. Counsel pointed to the fact that the interview was conducted more than one month after T had disclosed the alleged incidents of abuse and eight months after the last alleged incident of abuse. Moreover, defense counsel argued that T, who had testified just prior to Silva, had not established through her own testimony that she understood the interview to have any medical purpose, having indicated that she did not undergo any medical examination or procedure as part of the interview.[9] Defense counsel also pointed out to the court that, during the forensic interview, Silva had asked T why her father had brought her to the clinic that day and that T had responded, "[b]ecause the [department] said to come here today so they can ask questions . . . ."

The prosecutor argued to the court that it was reasonable to infer from T's testimony that the interview had

_____

[9] The relevant portion of T's direct testimony regarding the forensic interview was as follows:

"Q. . . . [D]id you meet with Maria Silva from Yale?

"A. Yes.

"Q. And do you remember why you met with Maria Silva from Yale?

"A. She was explaining to me that she wanted to make sure I knew the body parts. She was showing me a poster of, like, a drawing of a body, telling me to point out what areas were which. And she would tell me that this was a place where people have similar—children have similar cases like mine, and they check for DNA and stuff like that.

"Q. So, did you get a medical examination while you were there?

"A. No. . . .

"Q. Did you meet with an [advanced practice registered nurse] after you met with Maria Silva, a nurse?

"A. No.

"Q. Did you start therapy soon after meeting with Maria Silva?

"A. Yes.

"Q. Were you going to therapy before meeting with Maria Silva?

"A. No."

The defense did not cross-examine T regarding the forensic interview.

a medical purpose, stating that "[t]he medical issue that she was there for was the sexual assault and the trauma that she was experiencing because of it." The prosecutor further noted that T had indicated in her testimony that she was there to discuss her body and had "mentioned DNA." The prosecutor further argued that, because the contents of the videotape had not yet been entered into evidence, the court, in deciding whether to admit the videotape, should not consider T's statement regarding the department.

The court, after hearing from the parties, stated on the record that the primary question before it was "whether there is sufficient information before the court and before the jury that the child in question, the alleged victim, understood that this was for a medical or psychiatric purpose." Thereafter, focusing on T's testimony regarding her understanding of why she was being interviewed by Silva; see footnote 9 of this opinion; the court stated: "So, as to the portion regarding other children, that has no relevance as to her understanding of what her purpose was for that day. As to the evidence that she began therapy after the fact, has no bearing on what her belief of was—belief for the purpose of that event going into it. That doesn't connect that dot. However, the piece regarding her being examined for DNA, the court will find that is sufficient basis for the medical exception provision to be satisfied, barely." The videotape of the forensic interview was subsequently played, in part, for the jury.[10]

We begin our analysis by setting forth relevant legal principles and our applicable standard of review. "The standard under which we review evidentiary claims

---

[10] Three short segments of the videotaped interview were not played for the jury on the basis of other objections raised by defense counsel and sustained by the court, none of which is relevant to our discussion of the present claim. A redacted copy of the forensic interview containing only those portions played for the jury was admitted into evidence as a full exhibit.

depends on the specific nature of the claim presented.
. . . To the extent a trial court's admission of evidence
is based on an interpretation of [law], our standard of
review is plenary. For example, whether a challenged
statement properly may be classified as hearsay and
whether a hearsay exception properly is identified are
legal questions demanding plenary review. . . . We
review the trial court's decision to admit evidence, if
premised on a correct view of the law, however, for an
abuse of discretion." (Internal quotation marks omit-
ted.) *State* v. *Gordon*, 206 Conn. App. 70, 81–82, 259
A.3d 676, cert. granted, 339 Conn. 913, 262 A.3d 135
(2021) (appeal withdrawn April 8, 2022).

"Hearsay is an out-of-court statement offered for the
truth of the matter asserted and generally is inadmissi-
ble. . . . The rules of evidence, however, recognize
that certain out-of-court statements warrant an excep-
tion to the general rule that hearsay constitutes inadmis-
sible evidence. . . . [S]tatements made by a sexual
assault victim to a social worker who is acting within
the chain of medical care may be admissible under
the medical treatment exception to the hearsay rule."
(Citations omitted; internal quotation marks omitted.)
*State* v. *Freddy T.*, 200 Conn. App. 577, 590–91, 241 A.3d
173 (2020); see also *State* v. *Roy D. L.*, 339 Conn. 820,
834, 262 A.3d 712 (2021) (medical treatment hearsay
exception is applicable to forensic interviews if "the
surrounding circumstances could lead an objective
observer to reasonably infer that the victim's statements
were given in order to obtain medical treatment and
diagnosis" (internal quotation marks omitted)).

The medical diagnosis and treatment exception to
the hearsay rule, codified in § 8-3 of the Connecticut
Code of Evidence, provides in relevant part: "The fol-
lowing are not excluded by the hearsay rule, even
though the declarant is available as a witness . . . (5)

. . . A statement made for purposes of obtaining a medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof, insofar as reasonably pertinent to the medical diagnosis or treatment." As our Supreme Court has explained, "the rationale behind the medical treatment exception is that a person's desire to recover his [or her] health incentivizes them to tell the truth to individuals involved in their medical care." (Internal quotation marks omitted.) *State* v. *Roy D. L.*, supra, 339 Conn. 833–34.

Thus, "§ 8-3 (5) [of the Connecticut Code of Evidence] sets forth . . . a two-pronged test. The first [prong] addresses the declarant's purpose or motivation in the making of the statement, and the second addresses the pertinence of the statement to that end.[11] . . . The application of the medical treatment exception, therefore, turns in the first instance on the declarant's state of mind and the purpose for which each individual statement was made. . . . The purpose prong is satisfied so long as the declarant's statement was motivated, *at least in part*, by a desire to obtain medical treatment or a diagnosis." (Citations omitted; emphasis added; footnote added; internal quotation marks omitted.) Id., 831.

"[T]he proper application of the existing medical treatment hearsay exception . . . [can] ensure the reliability of . . . statements made at a forensic interview. . . . In cases in which the substance of a juvenile

---

[11] Although the record before us is silent regarding the pertinence prong of § 8-3 (5) of the Connecticut Code of Evidence, the defendant has not raised on appeal any claim that the court failed to consider pertinence in admitting the videotaped interview or that any admitted statements by T failed to meet the test for admissibility under § 8-3 (5). Accordingly, we do not address the issue further.

declarant's statement and the circumstances surrounding the statement support an inference that the statement was made in furtherance of obtaining medical treatment, a trial court can reasonably conclude that the purpose prong of the medical treatment exception is satisfied." (Citation omitted; internal quotation marks omitted.) Id., 833.

In the present case, the circumstances surrounding the interview tend to support a reasonable inference that T would have understood that at least one purpose of her participation in the forensic interview was related to her obtaining medical treatment, which would include treatment for any potential mental health issues. See, e.g., *State* v. *Cecil J.*, 99 Conn. App. 274, 289, 913 A.2d 505 (2007) (statements made for purpose of psychological therapy were admissible pursuant to medical treatment exception to hearsay rule), aff'd, 291 Conn. 813, 970 A.2d 710 (2009). Silva's interview with T took place at a medical clinic. Upon arrival, Silva escorted T to the second floor to be registered as a medical patient within the Yale New Haven health care system. T was then given a medical bracelet. Prior to the interview, T met with a child life specialist whose job it was to assess T for any developmental delays and her ability to move forward with the interview process. During the forensic interview, Silva explained to T that she wanted to make sure that T knew different body parts and asked her to point out the affected areas of her body on an anatomically correct poster. Additionally, as recognized by the trial court, T believed that one of the purposes of the interview was to "check for DNA . . . ."

T also stated during the interview that the department had sent her to the clinic. The defendant argues that, because the department is primarily an investigative agency, not a health care agency, the fact that the department sent T to the clinic for the forensic interview

undermines any conclusion that she understood the interview to be for medical treatment purposes. The referral by the department, however, established only *who* sent her to the clinic, not *why* she was sent or, more importantly, whether she reasonably believed the interview would also address medical concerns. Stated differently, the referral by the department did not make it less likely that T's statements during her interview were in some part motivated by her desire to obtain medical treatment, including an evaluation of her current mental health.

At the end of the interview, T was in fact told that she would have the opportunity to ask a nurse about any concerns that she had. The defendant argues that, because T was not told that she could speak with a nurse until the end of the interview, she was not aware that her statements during the interview had any medical purpose, and thus the interview was not for medical treatment purposes. It is true that, in *Freddy T.*, we noted that, "allowing the hearsay exception to be invoked as a result of medical referrals made at the end of a forensic interview poses a risk that the state can 'sanitize' the interview and subvert the hearsay exception." *State* v. *Freddy T.*, supra, 200 Conn. App. 594 n.16. Ultimately, however, "the focus of the hearsay exception is the declarant's understanding of the interview's purpose, i.e., was it relevant for medical purposes." Id. Accordingly, Silva was not required to expressly inform T that the interview was for medical treatment purposes or to make medical referrals prior to the interview in order for T to have been motivated to participate to obtain medical treatment or a diagnosis. See id., 593 ("the state need only show that the forensic interview had a medical purpose that the declarant reasonably understood").

On the basis of T's statements during the interview, in particular her statement regarding DNA, and, more

importantly, the circumstances in which she made those statements, including the location and nature of the interview, an objective observer reasonably could conclude that T's disclosures during the interview were made, at least in part, for the purpose of receiving medical treatment and were pertinent to that end. We, therefore, conclude that the trial court did not abuse its discretion in admitting the videotaped recording of the forensic interview under the medical treatment exception to the hearsay rule.

### III

Finally, the defendant claims that the trial court improperly limited the disclosure to him of certain of T's confidential medical and mental health records. According to the defendant, the court's partial disclosure and significant redactions of such records prevented him from fully cross-examining and impeaching T about her allegations against him, which he speculates could have been the result of animus against him and a desire not to be separated from her father. The defendant also argues that the jury had heard harmful testimony from T's therapists, Julia Savio, a licensed marriage and family therapist, and Mariyah Charlton, a clinical mental health counselor, about the impact of the alleged sexual abuse on T's mental health, and he posits that some of the redacted or undisclosed records may have shed light on alternative causes of T's mental health issues. Finally, the defendant suggests that the disclosed portions of the records indicate that T had participated in family therapy sessions but that the information about those sessions was redacted by the court. The defendant argues that, assuming T's father and brother had participated in those sessions, anything they said that was inconsistent with their testimony, was exculpatory in any way, or gave insight into T's relationship with her father would have been useful in

the defendant's cross-examination of them as witnesses. The defendant asks us to review the undisclosed portions of the record as well as the unredacted versions of the disclosed records "to determine whether the undisclosed pages or redactions contained important impeachment or exculpatory information."

The state responds that, without access to the undisclosed portion of the records at issue, it is "unable to offer a meaningful response to the defendant's speculative assertion that the trial court improperly restricted his ability to cross-examine T, Savio, and Charlton." Nonetheless, the state agrees that this court must review the undisclosed portions of T's medical records to determine whether the trial court abused its discretion and, if so, whether that error was harmful.

The following additional facts and procedural history are relevant to this claim. Prior to trial, the state subpoenaed certain confidential medical and mental health records pertaining to T. The records were submitted to the court under seal, and, by agreement of the parties, the court conducted an in-camera review of the records to determine what records, if any, should be disclosed to the parties. At a proceeding on December 5, 2022, the court informed the parties that it had begun its review of the records and had determined that several documents would need to be disclosed, albeit with substantial redactions. The court indicated that, once its review of the records was complete, it would have the courthouse clerk's office make copies available to the parties of any disclosable records. The court thereafter provided the parties with copies of a significant portion of the reviewed records, with redactions. The court also marked a set as a court exhibit.

On February 8, 2023, prior to the start of the first day of evidence, the defendant filed a motion asking the court to conduct an additional in camera review of

the sealed records in light of our Supreme Court's then newly released decision in *State* v. *Juan A. G.-P.*, 346 Conn. 132, 287 A.3d 1060 (2023). Although the defendant acknowledged in his motion that the court already had conducted an in camera review at the request of the parties, he argued that the court had conducted that review "without the guidance for the court provided by *Juan A.* [*G.-P.*]. "The defendant noted that the records the court had disclosed were heavily redacted and that the "entire record must be reviewed to determine if there is exculpatory information, inculpatory information, or information probative of [T's] ability to know and relate to the truth with respect to the event in question, and her ability to observe, understand and accurately narrate the events in question." Defense counsel stressed that it was particularly important to the defense "to know fully every reason as to why [T] is seeking mental health treatment" and that the records the court had provided appeared to redact many of those reasons. The state opposed the motion.

In response to the defendant's motion, the court indicated on the record that it believed it already had conducted an appropriate and thorough review of the records and had disclosed any and all records that the court determined would "show some tendency to disprove or prove relevance as to truthfulness, any regard to the allegations themselves and things of that nature. So, exculpatory, inculpatory, and just relevance to truthfulness or untruthfulness. So, that was my view of those records. So, it was in line with the Supreme Court case [*Juan A. G.-P.*]." The court also agreed with the state's position that *Juan A. G.-P.* "did not create new law, did not expand the scope [of in camera review]; it just restated the law based on improper exercise of that review . . . ." On that basis, the court denied the defendant's motion requesting an additional in camera review of T's medical records.

We next set forth the law relevant to this claim as well as the applicable standard of review. "A criminal defendant has a constitutional right to cross-examine the state's witnesses, which may include impeaching or discrediting them by attempting to reveal to the jury the witnesses' biases, prejudices or ulterior motives, or facts bearing on the witnesses' reliability, credibility, or sense of perception. . . . Thus, in some instances, otherwise privileged records . . . must give way to a criminal defendant's constitutional right to reveal to the jury facts about a witness' mental condition that may reasonably affect that witness' credibility. . . . [T]he linchpin of the determination of the defendant's access to [confidential] records is whether they sufficiently disclose material especially probative of the ability to comprehend, know and correctly relate the truth . . . so as to justify breach of their confidentiality and disclos[ure] . . . in order to protect [the defendant's] right of confrontation." (Citations omitted; internal quotation marks omitted.) *State* v. *Francis*, 267 Conn. 162, 177, 836 A.2d 1191 (2003). "[E]ven inculpatory material contained in psychiatric records is relevant information and should be turned over to the defense. This is so because the inculpatory information may differ from the evidence presented at trial, or be inconsistent with the victims' other statements, thereby calling into question the reliability of the state's version of events." *State* v. *Juan A. G.-P.*, supra, 346 Conn. 155–56.

Upon conducting an in camera review of confidential records, "[i]f the court discovers no probative and impeaching material, the [records] must be sealed and preserved for possible appellate review. . . . Once the trial court has made its inspection, the court's determination of a defendant's access to the witness' records lies in the court's sound discretion, which we will not disturb unless abused. . . . Access to confidential records should be left to the discretion of the trial court

which is better able to assess the probative value of such evidence as it relates to the particular case before it . . . and to weigh that value against the interest in confidentiality of the records." (Internal quotation marks omitted.) Id., 154.

In the present case, T's confidential medical records were subpoenaed by the state, delivered to the court, sealed and properly marked as a court exhibit to preserve them for appellate review. The court conducted an in camera review of T's records and, on the basis of that review, disclosed portions of the records to the defense. When asked by the defendant to conduct a second review following our Supreme Court's decision in *Juan A. G.-P.*, the court declined to do so, explaining that its prior review of the records was conducted utilizing the correct legal standard. We agree with the trial court that *Juan A. G.-P.* did not alter the standard applicable to an in camera review of confidential records and that, to the extent the Supreme Court clarified that courts have a duty to search for both relevant exculpatory and inculpatory material in conducting their review, the trial court indicated that it had done so in this case. Accordingly, to the extent that the defendant is claiming that there was error in the manner in which the court conducted its review, he has failed to demonstrate such error.

Moreover, having engaged in our own examination of the records in question, as required; see, e.g., *State v. Delgado*, 64 Conn. App. 312, 319, 780 A.2d 180 (2001), aff'd, 261 Conn. 708, 805 A.2d 705 (2002); we cannot conclude that the trial court abused its discretion by declining to release other portions of the records to the defendant or by redacting some portions of the records it did disclose. Because the trial court applied the appropriate legal standard in conducting its review and appropriately balanced the parties' competing interests, including the significant interest in the confidentiality

of mental health records,[12] and because, on the basis of our own review of the records, we are not persuaded that the trial court's limited disclosure of T's confidential records likely impaired the defendant's rights to impeach or cross-examine witnesses, the defendant's claim fails.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[12] See General Statutes § 52-146e; *State* v. *Kemah*, 289 Conn. 411, 424, 957 A.2d 852 (2008) ("[Section] 52-146e spreads a veil of secrecy over communications and records relating to the diagnosis or treatment of a patient's mental condition. . . . The broad sweep of the statute covers not only disclosure to a defendant or his counsel, but also disclosure to a court even for the limited purpose of an in camera examination." (Citation omitted; internal quotation marks omitted.)).